RANSOM-ELLIS COMPANY, INCORPORATED, Appellant, v. B. C. EPPELSHEIMER, Appellee.

MARCH 13, 1928.

*Strock, Cunningham, Sloan & Herrick,* for appellant.

*Parsons & Mills* and *Volney Diltz,* for appellee.

MORLING, J.—The trial court rejected plaintiff's offer of evidence of the reasonable value of the services alleged, and refused to submit to the jury plaintiff's claim on *quantum meruit,* for the reason that plaintiff also pleaded and introduced evidence tending to establish an express contract. These, in substance, are the rulings complained of.

Plaintiff pleaded in one count a cause of action on an express agreement to pay a commission of 5 per cent, and in another count, a cause of action on an employment not stated to be for a stipulated commission, but claiming reasonable value of the services alleged. Plaintiff's evidence is to the effect that defendant authorized its employees, known by defendant to be such, to sell the property or find a purchaser, and that the purchaser was found by it. One witness, Cunningham, testified to an express agreement to pay a commission of 5 per cent. Plaintiff's evidence also tended to show that, after the services were rendered, defendant offered to pay one half of the 5 per cent. One of plaintiff's employees was Scott Baker. Defendant's evidence tended to show that plaintiff's employees asked him if the property was for sale, were told that he would sell, if he could get his price, were given the price, $9,000, and told about the incumbrances, were shown over the property by defendant; that plaintiff's employees brought the prospective customer, Miss Watts, who was shown the property by Baker and defendant; that defendant was informed that Baker and also Cunningham, who claims to have made the agreement for commission, were "with" or "of" the plaintiff; that defendant told them he would not sell through a real estate firm; and "that no part of conversation was concerning commissions to be paid by anyone to anyone else." The evidence shows that defendant received an offer of $8,500 direct from Miss Watts, which stated:

"I don't know whether Mr. Scott Baker is acting for you as your agent. If any commission is to be paid to him or to anyone else because of my purchase of your property from you, you will have to pay it."

Defendant testified that, in conversation with plaintiff's employees after this offer was received, one of them "said, 'Let us handle it. We will probably get it up to $9,000 again.' I said, 'I haven't any contract with you. Don't want anything to do with you.' I said I offered Baker $50. * * * Baker never indicated he was in the real estate business, prior to that time. * * * Never authorized corporation [plaintiff] to act as my agent. Never paid anyone a commission for selling this property. Never agreed to pay anyone a commission, outside of $50 item mentioned to Baker. Offer was later accepted, and I closed the deal with Miss Watts and received payment."

Miss Watts paid $8,600.

Without further details, it is sufficient to say that the evidence was such that the jury might have found that plaintiff, through its agents, was expressly, or by implication, employed to find a purchaser, and that there was an understanding that defendant should pay a commission, but that there was no agreement upon the amount thereof.

The truth in such controversies is not always all on one side. There may be misunderstandings upon both sides, even when the business is transacted directly by those immediately concerned. Plaintiff was a corporation, and could act only through its agents. In drawing its pleadings, plaintiff was compelled to rely upon the information received from its agents. These considerations illustrate the injustice of requiring a party to elect to take a definite stand upon the precise terms of an oral contract upon which he relies. It may be that a contract was made, and it may be that all of the terms were agreed upon, or only part of them, —part expressly, and part by implication. In pleading, plaintiff knows that the triers of fact may adopt the claims of one side or the other, or partly one and partly the other. Out of these and similar considerations the law has always been (if we may use that expression) that plaintiff may separately count on an express contract and an implied contract, and may join common and special counts. *Richmann v. Beach*, 201 Iowa 1167; 21 Ruling Case Law 470; 13 Corpus Juris 748, 750; 5 Corpus Juris 1399; *Way v. Root*, 174 Mich. 418 (140 N. W. 577); *Moore v. Gaus & Sons Mfg. Co.*, 113 Mo. 98 (20 S. W. 975, 976); *Williams v. Chicago, S. F. & C. R. Co.*, 112 Mo. 463 (20 S. W. 631); *Holm v. Chicago, M. & P. S. R. Co.*, 59 Wash. 293 (109 Pac. 799); *Berry v. Craig*, 76 Kan. 345 (91 Pac. 913); 13 Corpus Juris 749, 750. Under code practice in some states, it is the transaction, rather than one of the various possible aspects of it, that constitutes the cause of action, and it must be set out in a single count. Idem. Our practice permits the cause of action arising from a single transaction to be set out in separate counts, to meet the exigencies of the case as they may develop in the proofs. If all the evidence, including that introduced by the defendant, as well as that of the plaintiff, supports both causes of action, both should be submitted. In *Fisher & Ball v. Carter*, 178 Iowa 636, a petition for commission was drawn in two counts,—one claiming

the reasonable value, and the other an agreed commission. We said:

"Counsel for appellant contends that there was no evidence tending to support the first count, and therefore that the court erred in submitting to the jury whether plaintiffs should recover on a *quantum meruit*. Fisher testified that defendant first came into the office of Ball & Fisher in the spring, and requested him to find 'a buyer in exchange' for his Kansas land; that he kept looking up proposals for exchange and examining real estate bulletins for some time, and finally suggested an exchange for land advertised by one Henton, near Ridgway, Missouri; and that defendant, Carter, with his assistance, finally exchanged his Kansas farm for this land. He also testified that Carter and he agreed that, in event of an exchange, the former was to pay plaintiff firm $1 per acre commission. Carter denied ever having employed the firm, or either member of it, to negotiate an exchange, or having agreed to the payment of any sum per acre or otherwise as commission. Evidently, then, the jury might have found the employment and the rendition of services, as testified by Fisher, but have concluded that there was no agreement as to the amount to be paid as commission; and, if so, they must have allowed the reasonable value of the services rendered. It cannot be said, then, that there was no evidence in support of the first count, nor that evidence of the reasonable value of the services rendered was inadmissible."

*Tuffree v. Binford,* 130 Iowa 532, 535; *Farmers' Sav. Bank v. Arispe Mercantile Co.,* 139 Iowa 246.

The testimony to an express agreement to pay 5 per cent commission was given by one witness. Testimony tending to show employment was given by other witnesses. The jury might have rejected the testimony of the agreement on the amount of commission, and still have found an implied contract, within the rule that the contract of employment of the broker and the agreement to pay for the services rendered may be implied, as well as express. *Hopkins v. Convy,* 191 Iowa 402; 9 Corpus Juris 556.

Of course, if the plaintiff had pleaded only an express contract, or if the evidence showed without dispute the existence of an express agreement upon the amount of the commission, plaintiff would not be entitled to introduce evidence of the reasonable

value of the services. This was held in *Seevers v. Cleveland Coal Co.*, 179 Iowa 235, where the action was on an express agreement to pay 5 per cent commission. This court there said:

"If a contract had been admitted by defendant, and there had been a dispute as to the commission to be paid, doubtless the testimony offered should have been received, under the rule announced in *Roberts v. Roberts*, 91 Iowa 228, *Likes v. Baer*, 10 Iowa 89, *Sullivan v. Herrick*, 161 Iowa 148, and other like cases. But where, as here, the dispute is wholly over the making of any contract at all, and no question is raised as to the amount of commission to be paid in the event there was such contract, the rule of inadmissibility obtains."

See, also, *Russell v. Clemens & Co.*, 196 Iowa 1121; *Kurtz v. Payne Investment Co.*, 156 Iowa 376, 386.

The testimony to the value of the services should have been received, and both counts should have been submitted to the jury.

The court instructed that, if the jury found for plaintiff on the employment, finding purchaser, and sale, the verdict should be for the 5 per cent commission. For the reasons stated, this was error.—*Reversed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.