FITZGIBBONS BOILER COMPANY, INC., Respondent, *v.* THE NATIONAL CITY BANK OF NEW YORK, Appellant, and FEDERAL RESERVE BANK OF NEW YORK and Others, Defendants, Impleaded.

FITZGIBBONS BOILER COMPANY, INC., Respondent, *v.* BANKERS TRUST COMPANY, Appellant, and WOODSIDE NATIONAL BANK OF NEW YORK, and ANTHONY DIOGUARDI, Doing Business as the YORKTOWN OIL BURNER SALES AGENCY, Defendants, Impleaded.

(Consolidated Action.)

First Department, June 18, 1941.

*David S. Konheim* of counsel [*Samuel Halpern* and *Anthony J. Wolf* with him on the brief; *Shearman & Sterling*, attorneys, for the appellant The National City Bank of New York; *Anthony J. Wolf*, attorney for the appellant Bankers Trust Company], for the appellants.

*Edward K. Hidalgo* of counsel [*Oleg Peter Petroff* with him on the brief; *Wright, Gordon, Zachry, Parlin & Cahill*, attorneys], for the respondent.

TOWNLEY, J. Plaintiff, a depositor in the National City Bank of New York, sues for the return of $6,740, the proceeds of ten checks, the indorsements of the respective payees of which were forged. Plaintiff is also a depositor in the Bankers Trust Company and pleads a similar cause of action on one check in the sum of $785. The issuance of these checks occurred through the dishonesty of an employee and officer of the plaintiff corporation, one Miano. There is no doubt that the money was wrongfully paid out on the checks. The jury, however, was left with the question whether the loss had been caused by the negligence of the plaintiff in retaining Miano in its employ when it had cause to suspect that his business conduct was dishonest or irregular in serious respects. There was left to the jury also the question whether there had been an account stated between the appellant banks and the depositor, the determination of which question depended upon whether the plaintiff was chargeable with knowledge of its employee's irregularities at the time the statements were received and retained.

Miano was the assistant treasurer of the plaintiff in charge of credits and collections. The method employed by him was to present to plaintiff's president papers covering purely fictitious transactions involving the sale of boilers and to procure the execution of a check to cover the financing undertaken in connection therewith. The name of the payee was then forged and the proceeds of the checks appropriated by him. It was conceded by the plaintiff that prior to the issuance of the eleven checks in suit, Miano had fraudulently caused the plaintiff to issue thirty-four other checks aggregating over $33,000 in connection with transactions which admittedly never took place. There was evidence that the majority of these checks were issued in connection with applications for financing which had previously been rejected by the plaintiff. Many of these rejected applications were still in plaintiff's possession and any examination of its records would have disclosed the fraudulent character of these transactions.

Direct notice that Miano was engaged in irregular transactions was given to plaintiff's treasurer by one Dioguardi, a customer. He testified that prior to the transactions involved here, Miano telephoned him to destroy a statement of account which he would shortly receive. He said that prior thereto he had been receiving bills for boilers which he had never purchased and checks from Miano where no money was owing by the plaintiff. Becoming alarmed at the apparent irregularity of these transactions, he called upon the plaintiff's treasurer, told him about these experiences and said that he was concerned about what was going on and the way that his business was being handled by Miano. Finally when nothing was done he stopped doing business with the plaintiff. Had plaintiff paid attention to this direct warning and made any investigation of Dioguardi's account, the irregular character of many of the transactions recorded therein would have at once been apparent. It elected to do nothing and the further irregularities involved here became possible.

Plaintiff claims that Dioguardi's testimony was not worthy of belief. His credibility, however, was for the jury. Many other instances in connection with the manner in which plaintiff carried on its business show that all its transactions were extremely careless, so much so in fact that numerous clerks suspected that the accounts were seriously wrong. The jury might well have believed that if the clerks had this well-founded suspicion, the officers of the company were seriously derelict in their duty in not supervising its affairs so as to find out what was really going on. The result of Miano's transaction was that half the notes receivable carried on plaintiff's records prior to the time of the issuance of these checks

were fictitious and fraudulent. Furthermore, any proper comparison of the returned checks with the records of the company would have revealed that the transactions were fraudulent. The question of negligence and an account stated were, therefore, properly left to the jury and there was ample evidence to sustain their verdict.

The judgment and order should be reversed, with costs, and the verdict should be reinstated.

MARTIN, P. J., COHN and CALLAHAN, JJ., concur.

Judgment and order unanimously reversed, with costs, and the verdict reinstated.