FITZGIBBONS BOILER COMPANY, INC., Appellant, *v.* NATIONAL CITY BANK OF NEW YORK, Respondent, Impleaded with Others.

FITZGIBBONS BOILER COMPANY, INC., Appellant, *v.* BANKERS TRUST COMPANY, Respondent, Impleaded with Others.

Argued December 8, 1941; decided January 15, 1942.

*Edward K. Hidalgo* and *Oleg Peter Petroff* for appellant. The defense of negligence cannot be sustained because the plaintiff did not neglect to perform any duty which it owed to the banks in failing to conduct an investigation. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *Paton Co.* v. *Guaranty Trust Co.*, 227 App. Div. 545; 254 N. Y. 621; *Knox* v. *Eden Musee Co.*, 148 N. Y. 441; *People's Trust Co.* v. *Smith*, 215 N. Y. 488; *Spiegel Realty Corp.* v. *Gotham Nat. Bank*, 121 Misc. Rep. 547; 208 App. Div. 843; *Welsh* v. *German American Bank*, 73 N. Y. 424; *Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64; *Potts & Co.* v. *Lafayette Nat. Bank*, 269 N. Y. 181; *Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Stumpp* v. *Bank of New York*, 212 App. Div. 608.) The defense of negligence cannot be sustained because even if the plaintiff was negligent, its negligence was not the proximate cause of the loss. (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247; *Frank* v. *Chemical Nat. Bank*, 84 N. Y. 209; *Gutfreund* v. *East*

*River Nat. Bank*, 251 N. Y. 58; *Jordan-Marsh* v. *National Shawmut Bank*, 201 Mass. 397; *Kobre* v. *Corn Exchange Bank*, 79 Misc. Rep. 212.)

*David S. Konheim, Samuel Halpern* and *Anthony J. Wolf* for respondents. Plaintiff may not recover on the checks because prior to the issuance thereof it had notice of other frauds of its employee. (*Kiernan* v. *Krauth*, 242 App. Div. 772; *Tousey* v. *Hastings*, 194 N. Y. 79; *Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225; *Rochester & C. T. R. Co.* v. *Paviour*, 164 N. Y. 281; *National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247; *Hanrahan* v. *New York Edison Co.*, 238 N. Y. 194; *Frank* v. *Von Bayer*, 236 N. Y. 473; *Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510; *City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64; *McLaughlin* v. *National City Bank*, 228 App. Div. 337; *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58.) Plaintiff is precluded from maintaining the suit by reason of the account stated with the defendants. (*Potts* v. *Lafayette Nat. Bank*, 269 N. Y. 181.) Plaintiff facilitated the commission of the frauds by executing the checks in blank. (*Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *National Surety Co.* v. *Bank of Manhattan*, 252 N. Y. 247.)

FINCH, J. This is a consolidated action by a depositor against two drawee banks to recover the sums paid out on eleven checks which bore forged endorsements of the names of the respective payees. The forgeries were committed by an employee of the plaintiff corporation. In their separate answers the defendant drawee banks deny the forgeries and allege affirmatively they are not liable for breach of the contract made with the plaintiff depositor that they would not disburse its money on forged endorsements. Their reasons are: *First,* the checks were bearer instruments and, therefore, payment thereof was in accordance with their tenor. *Second,* the loss is directly attributable to the negligence of the plaintiff. *Third,* the checks in dispute are covered by accounts stated between the plaintiff and the banks. Lastly and by way of a partial defense, the banks

allege that the employee who committed the forgeries has repaid to the plaintiff the proceeds of six of the eleven checks and, hence, no loss has been sustained by plaintiff with respect to these six checks. The trial court submitted to the jury two specific questions, one dealing with the issue of the negligence of plaintiff, and the other with the issue of accounts stated. The court charged the jury that if they found in favor of the defendants on either issue, their verdict must be for the defendants. The jury found for the defendants on both questions. The trial court set aside the verdict of the jury, granted a motion by plaintiff, theretofore reserved, for a directed verdict and, accordingly, granted judgment. Upon appeal, the Appellate Division reversed the judgment in favor of plaintiff, reinstated the verdict of the jury, and ordered judgment on the verdict in favor of defendants upon the ground that there was evidence to support the verdict and that the latter was sufficient to support the judgment for defendants. The appeal to this court, therefore, presents only questions of law. (*Markiewicz* v. *Thompson*, 246 N. Y. 235; Cohen, Powers of the New York Court of Appeals, pp. 137, 341.)

Plaintiff is in the business of manufacturing and selling boilers. In order to encourage sales, plaintiff would undertake to finance the cost of installation as well as to extend credit on the purchase price. A " finance " sale would be arranged in the following manner. A prospective purchaser would execute his promissory note to a local dealer to cover the cost of the boiler, installation and credit charges. The dealer in turn would endorse the note without recourse and forward it to plaintiff. If the transaction was approved by plaintiff, then upon completion of the installation, plaintiff would forward its check to the dealer for the face amount of the note less the price of the boiler and credit charges.

An individual named Miano was assistant treasurer and also credit manager of the plaintiff corporation. He had come into plaintiff's employ in 1922 and in 1930 had advanced to the position of assistant treasurer. There is no doubt he was an important officer of the plaintiff corporation and entrusted with the care of confidential matters. Upon

the direction of Miano, the accounting department, headed by another officer of the corporation, would prepare checks for signature by an appropriate officer in accordance with the supporting data submitted by Miano. Beginning in the latter part of 1935 and continuing through 1936, Miano caused the issuance of thirty-four checks to several dealers with whom plaintiff had had business contacts, but who were not entitled to the checks in question since they were not based on actual sales. Miano's course seems to have been to deliver a check to the dealer named as payee and then to obtain to his personal credit a check drawn by the dealer in equal amount. In January and February, 1937, Miano simplified his procedure by forging the names of the payees of the eleven checks in suit. In September, 1937, the president of plaintiff corporation learned of Miano's defalcations from the latter's attorney.

The banks contend they are not liable, at least with respect to some of the checks, because these particular checks were issued as bearer instruments. To support the argument that some of the checks were so payable, defendants assert that there is evidence in the record from which the jury might have found that at the time the president of plaintiff corporation signed such checks the names of the payees had not been inserted and that when Miano subsequently wrote in the names of the payees, he did not intend them to have any interest in the checks. (Negotiable Instruments Law, § 28, subd. 3; Cons. Laws, ch. 38.) The conclusion sought by defendant banks cannot be sustained for the record contains no evidence that the checks were signed in blank except for a vague statement that " the great majority of the checks were signed in blank by Mr. Homer Adams." This statement is to be found in an affidavit executed by Miano prior to the trial which defendants introduced solely for the purpose of impeaching Miano as a witness and, therefore, the statement cannot serve as affirmative evidence of the truth of the fact sought to be proved by defendants. (Civ. Prac. Act, § 343-a; *Matter of Roge* v. *Valentine*, 280 N. Y. 268, 276.) Therefore, we need not now consider

the effect of signing a check before the name of the payee is inserted by one other than the person issuing the check. (Cf. *Cohen* v. *Lincoln Sav. Bank*, 275 N. Y. 399, 402; Brannan, Negotiable Instruments Law [6th ed.], pp. 207, 208.)

Defendants next contend that they are not liable for breach of contract made with their depositor, because the breach was the result of negligence on the part of the depositor. They urge that plaintiff was negligent in failing to discover the fraud of Miano prior to the issuance of the eleven checks in suit in January and February, 1937. Plaintiff, of course, may not insist on the fulfilment of a contract to which it is a party if it can be said to have brought about the breach of that contract. The negligence of the depositor will bar recovery also where it has lulled the drawee bank into relaxing the vigilance it should have exercised in guarding against forged endorsements. There is no evidence in the record that the failure of the drawee banks to carry out the contract which they had undertaken was the proximate result of any act or failure to act on the part of the plaintiff depositor. (*American Surety Co.* v. *Empire Trust Co.*, 262 N. Y. 181; *City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64; *National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247; *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *Jordan Marsh Co.* v. *National Shawmut Bank*, 201 Mass. 397.) Thus, in *Jordan Marsh Co.* v. *National Shawmut Bank* (*supra*) a depositor's employee had forged the endorsements of the payees named in 170 checks over a period of five years and thereby abstracted about $50,000. It was found as a fact by the trial court that the depositor had been negligent in not discovering and preventing the employee's fraud. It was also found as a fact by the trial court that the negligence of the depositor induced the drawee bank to pay the checks in suit. On appeal, the Supreme Judicial Court of Massachusetts reversed the judgment for the defendant on the ground that the negligence of the depositor in failing to protect itself against fraud did

not lead the bank astray in the discharge of its contractual obligation not to pay the checks except in accordance with their tenor. " The plaintiff had nothing to do with the payment, or with the defendant's performance or non-performance of its duty to see that payment was made to the right person." (201 Mass. at p. 408.) *Prudential Ins. Co.* v. *National Bank of Commerce* (227 N. Y. 510, 518) is not to the contrary. In that case, among the other circumstances shown in the record, it appeared that the depositor would transmit checks to its district agent for delivery to various payees. One of the district agents had made it a practice to forge the endorsement of the payee and then collect the proceeds of the checks by adding his own endorsement. The checks bearing the forged endorsements together with the signatures of the agent were returned to the depositor from time to time. Prior to the payment by the drawee bank of the first of two checks on which suit was brought by the depositor, the latter had received a letter from a payee stating that he had not yet received the check which he had been promised. At that time there had already been returned to the depositor a check drawn to the order of the complaining payee which bore the forged endorsement of the name of the payee as well as the endorsement of the agent. As noted by the court in its opinion: " The jury could have found that a casual comparison of the indorsements on the Cuzner [the complaining payee] check in its possession with the genuine signature of the Cuzners also in plaintiff's possession, would have shown that the indorsements were not the genuine signatures of the Cuzners." (227 N. Y. at p. 518.) Thus the letter of the payee brought home to the depositor clear notice that its checks were being forged and that the agent in question was the forger. In the case at bar, on the other hand, Miano had forged no endorsements prior to the checks in suit and the plaintiff depositor could not by a comparison of returned checks detect the forged character of the endorsements of the checks in suit. The drawee bank seeks to establish notice of some sort to the depositor by virtue of

the fact that one of the dealers who had accommodated Miano by issuing his own checks to the personal order of Miano in return for the plaintiff's checks to which he was not entitled, complained to one of the officers of the plaintiff corporation of the statements of account rendered to him by the plaintiff. A reading of the testimony in this regard shows that the dealer was complaining of being overcharged and there was nothing in the information which he submitted to the plaintiff which reasonably would have indicated that Miano was diverting the proceeds of checks, much less that he was forging endorsements. In *Morgan* v. *U. S. Mortgage & Trust Co.* (208 N. Y. 218) the signatures that were forged were those of the drawer and not of the payees and it is well settled that while a depositor is under a duty of detecting forgeries of his own signatures, ordinarily he is in no position to know the signature of the payees and, therefore, is under no duty to detect forged endorsements of the signatures of payees. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 227.)

Concerning the relation of the negligence of the depositor to the contractual undertaking of the banks not to pay out upon forged endorsements, we have said: " The drawer owed to the drawee the duty only that it would not by act or misrepresentation facilitate a fraud upon it. * * * Negligent failure by the drawer to protect itself against fraud in procuring the making of the drafts does not cast upon the drawer the risk that they will be paid upon a forged endorsement." (*American Surety Co.* v. *Empire Trust Co.*, 262 N. Y. at p. 186.)

Defendants have presented no evidence to excuse the banks from fulfilling their contract to the depositor. In so far as the verdict of the jury may purport to find that defendants were misled by the negligence of plaintiff, the verdict is unsupported by any evidence and must fail as a matter of law.

The drawee banks contend that although they may have been guilty of a breach of contract, nonetheless recovery is barred for the further reason that accounts were

stated between the parties for the months of January and February, when the eleven checks in suit were paid by the banks. These statements of account were delivered to plaintiff at the beginning of February and of March for January and February respectively. Included with the statements were the checks bearing the endorsements forged by Miano. A depositor is not concluded by the bank's statement where he is ignorant of the facts and cannot reasonably be expected to know them. The statements of account charged the depositor with the knowledge which an examination of the statements themselves would disclose. The basis of this rule is the duty of the depositor to make such an examination. There is no duty upon a depositor to ascertain whether the endorsements are genuine or forged. In *Shipman* v. *Bank of State of New York* (126 N. Y. 318, at p. 328) we said: " The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity, by requiring identification when the check is presented, or a responsible guarantee from the party presenting it, of ascertaining whether the indorsement is genuine or not. When it returns the check to the depositor, as evidence of a payment made by his direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine." (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247; *Potts & Co.* v. *Lafayette Nat. Bank*, 269 N. Y. 181, 189.)

There is nothing is this record to establish that plaintiff at the time the accounts were rendered by the drawee bank knew or was under a duty to investigate the signature of the payees. It follows that the statements of account did not conclude plaintiff, and the verdict of the jury to the contrary is without any support.

It seems that prior to the termination of the employment of Miano he made partial restitution. This he did by crediting without any agreement with plaintiff the accounts of the several dealers who had been named by him as payees

in six of the eleven checks which he had forged. The obligations of Miano to plaintiff include not only the forged checks but also the sums paid out by means of thirty-four checks in 1935 and 1936. The amounts repaid by Miano were less than the sums lost by the plaintiff as the result of the series of thirty-four checks and it appears without dispute that at all times there was due to the plaintiff an amount in excess of the amount sued for herein. The defense of partial restitution, therefore, is not sustained by the record. (*Shipman* v. *Bank of State of New York*, 126 N. Y. at pp. 332, 333.)

Defendants also urge that in any event they are entitled to a new trial because of the failure of the trial court to submit as a question of fact for determination by the jury whether the endorsements claimed by the plaintiff as forgeries were in fact signatures authorized by the respective payees. This issue was properly withdrawn by the trial court from the jury for the reason that the only evidence in the record shows the existence of the forgeries. As was said on this issue by the Appellate Division: " There is no doubt that the money was wrongfully paid out on the checks." (262 App. Div. 142, 143.)

It follows that the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J. (dissenting). Upon forged endorsements the drawee banks have paid checks drawn by the plaintiff upon its bank accounts. By fraud of its assistant treasurer the plaintiff was induced to draw the checks to the order of the payees named therein. The guilty officer of the plaintiff then forged the names of the payees and appropriated the proceeds. If the plaintiff had used better methods of bookkeeping and had exercised greater vigilance in guarding against dishonesty of its employees the dishonesty of the assistant treasurer, in whom, it appears, the other officers of the corporation had great confidence, would have been discovered and he could not have obtained the checks and would not have had opportunity to forge

the endorsements upon them. Negligence in that respect would not, I agree, constitute a defense to an action brought by the depositor for breach of the bank's contract to pay out the moneys in the plaintiff's bank account, in accordance with directions of the depositor. Nor would such negligence give rise to a cause of action in favor of the bank (which the bank might interpose as a counterclaim) for damages consequent upon such negligence.

The cases cited in the opinion of Judge FINCH constitute decisive authority for that rule. Here there is more than mere failure by the depositor to use care in protecting itself against dishonesty of its employees. Here the evidence is sufficient to justify the finding of the jury that the plaintiff had notice that an employee was dishonest and the finger of suspicion pointed directly at the dishonest assistant treasurer. As the Appellate Division has pointed out in its opinion, one of the plaintiff's customers informed the plaintiff that it would discontinue business relations with the plaintiff because of the suspicious behavior of the delinquent officer in handling his account and manipulation of checks to his order and, as the Appellate Division also points out, other clerks in the accounting department strongly suspected that the depositor's bookkeeping accounts were seriously wrong. Closing its eyes to such notice, the plaintiff harbored a thief, though investigation would have disclosed previous thefts. The plaintiff, upon the representations of the thief, continued to issue checks to payees to whom it owed no moneys and then failed to examine the endorsements on the checks so issued to determine whether they were genuine.

In such case elemental principles of fair dealing place upon the depositor a duty to do more than merely examine the signature of the drawer on returned vouchers. Having notice that an employee was manipulating accounts and checks it was bound in its transactions with the bank to exercise care commensurate with the notice of the danger to which the bank would be subjected in carrying out its contract with the depositor. That might require a check-up

of returned checks with the entries of such checks in the depositor's book of account. Such a check-up would have shown that a large proportion of the checks were drawn upon misrepresentations of the depositor's dishonest officer and diverted by him. It might require, too, examination of the endorsement. (*Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510.) The facts in that case are strikingly similar to the facts in the case we are reviewing. There, too, checks to the order of named payees were delivered by a depositor to its agent, to be delivered by him to the payees, and the agent forged the name of the payee to the check and deposited the same to his personal account. There, too, the depositor received a complaint from a payee sufficient to give the plaintiff notice that its agent was dishonest, and the depositor would have discovered the forgery " if it had made any reasonable investigation of the check and documents in its possession " (p. 516). In that case a recovery by the depositor from the bank was reversed and a new trial ordered because the court had not submitted to the jury the question of fact whether the depositor was negligent and whether such negligence was a contributory cause of the bank's payment of the checks without discovery that the endorsement was forged. The court pointed out that under the circumstances of that case the jury might find that it was the duty of the depositor even to examine the endorsement of checks returned by the bank, citing *Morgan* v. *U. S. Mortgage & Trust Co.* (208 N. Y. 218). We have not in any later case departed from the rule there stated.

In this case these questions of fact were submitted to the jury. It found in favor of the defendant and, in my opinion, the Appellate Division correctly held that the defendant was entitled to the entry of judgment upon the verdict in its favor. Judgment should be affirmed, with costs.

LOUGHRAN, RIPPEY, LEWIS and CONWAY, JJ., concur with FINCH, J.; LEHMAN, Ch. J., dissents in opinion in which DESMOND, J., concurs.

Judgment accordingly.