WEAVER CONSTRUCTION COMPANY, appellee, v. FARMERS NATIONAL BANK of Webster City, appellant.

No. 50575.

June 12, 1962.

Hemingway & Hemingway, of Webster City, and Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellant.

Oppen & Wessels, of Iowa Falls, and Mitchell, Mitchell & Murray, of Fort Dodge, for appellee.

GARFIELD, C. J.—This is a law action, tried without a jury, by Weaver Construction Company against defendant, Farmers National Bank of Webster City, to recover proceeds of checks belonging to plaintiff, endorsed and cashed at defendant-bank by Donovan D. Reynolds, plaintiff's local manager, who then appropriated the cash to his own use. From judgment for plaintiff for much, but not all, of its claim defendant has appealed.

Plaintiff is a corporation with its main office near Alden, Iowa. In 1950 it constructed a plant in Webster City for the production of ready-mix concrete under the name Weaver Ready-Mix. Arthur J. Giles was in charge of the plant as local manager from the beginning until May 1956 when Reynolds succeeded him. About September 20, 1950, plaintiff opened an account in defendant-bank in which funds received by the Webster City plant were to be deposited.

Plaintiff claims, and the trial court found, that only its officers could draw on the account and the local manager was without authority to do so. Plaintiff furnished the bank signature cards of the officers who were authorized to draw on the account. The names of Giles or Reynolds were not included. The bank furnished Giles a rubber stamp for endorsing checks which contained the words "for deposit only." In depositing checks in the account Giles endorsed them with the stamp except in a few instances not now material.

Reynolds also used the stamp to endorse substantially all checks for about the first 18 months of his employment in Webster City and continued to use the stamp to endorse checks he deposited in the account. In late 1957 or early 1958, however, the bank permitted him to cash some of the checks without using

the stamped endorsement and he appropriated the proceeds to his own use. These checks were never credited to plaintiff's account. Reynolds continued this practice of receiving cash for some of the checks, without depositing them to Weaver's account, and misappropriating the cash until plaintiff discovered his defalcations in October 1959.

Throughout the time Giles and Reynolds were managers at Webster City the payroll and other bills there incurred were paid from the home office near Alden except for some small bills paid from a petty cash fund at Webster City. Monthly statements to customers of the Webster City plant were sent to Giles and Reynolds from Alden and by them mailed to the customers who in turn paid the account at Webster City. Most of the accounts, except some smaller ones, were paid by check. When Reynolds received from Alden a statement of an account he had collected and misappropriated in whole or part he would either not send the statement to the customer or change it, before doing so, to show the amount the customer had not paid.

Reynolds prepared deposit slips for the deposits before taking them to the bank and did not include in them the checks on which he secured the cash at the bank. He sent the Alden office a copy of each deposit slip showing the correct total deposited. Defendant sent monthly statements of the account to the Alden office. Printed on each statement was a provision it would be considered correct if errors or differences were not reported within 10 days. No report of any error or difference was made. The statements listed only the total of each deposit, not the items comprising it, nor the checks on which Reynolds procured the cash.

■ I. Our review is not de novo. The trial court's findings of fact have the effect of a jury verdict and are conclusive upon appeal if supported by substantial evidence. Rule 334, Rules of Civil Procedure; Harlan Production Credit Assn. v. Schroeder Elevator Co., 253 Iowa 345, 348, 112 N.W.2d 320, 322; Ritchie v. Hilmer, 251 Iowa 1002, 1004, 103 N.W.2d 858, 859, and citations.

■ II. Defendant's first assigned error is that there is no evidence to support the finding Reynolds was without authority

to endorse checks payable to plaintiff except for deposit to its account. We think there is substantial evidence to support this finding. The question is one of actual authority. No reliance is now placed on a claim of apparent authority.

Giles testified plaintiff instructed him to open in defendant-bank a depository account only; he so informed the bank president; when the account was opened there was talk about a stamp for endorsing checks; the bank furnished the stamp containing the words "for deposit only"; this stamp was used exclusively in endorsing checks for deposit in plaintiff's account; Giles had no authority to withdraw from the account and made none. It is fairly to be inferred that only plaintiff's officers who signed signature cards for the bank were authorized to make withdrawals. As stated, Reynolds used the stamp for endorsing checks for a considerable time after he succeeded Giles but did not use it later on the checks he cashed and appropriated to his own use.

Apparently the first time Reynolds cashed a check payable to plaintiff, rather than to deposit it to plaintiff's account, the teller who waited on him doubted his authority to do so, for she asked the cashier whether she should give Reynolds the cash on the check. Only after the cashier approved doing so was Reynolds given cash for the check. This was contrary to the custom that had prevailed for about seven years. After that it "came down through the grapevine in the bank it was all right to give Reynolds cash." One of the checks the bank permitted Reynolds to cash was for $2700. The excuse he gave the bank for cashing checks was that the money was needed to pay bills incurred by the Webster City plant. But, as stated, these bills were paid from the Alden office and the finding is warranted the bank knew, or should have known, this.

Defendant's cashier testified, "Our arrangements are the same now as they were before. We have been told now what to do, that is that the local manager is not to cash the checks."

No difficult or doubtful question of law is involved at this point. There is clear evidence Reynolds was without actual authority to draw on plaintiff's account or, to accomplish the same result, by receiving cash from defendant for checks payable to plaintiff which he was to endorse for deposit and deposit in

the account. It is conceded defendant knew Reynolds was not authorized to draw on the account but it is argued it did not know Reynolds was to deposit the checks in the account rather than to cash them.

Effect of the argument is that defendant did not know Reynolds could not do indirectly, by cashing checks payable to plaintiff, what it knew he could not do directly, by drawing on plaintiff's account. Beacon Chocolate Co. v. Bank of Montreal, 7th Cir., Ill., 14 F.2d 599, 600 (certiorari denied 273 U. S. 744, 47 S. Ct. 336, 71 L. Ed. 870). It is sufficient to say there is evidence to support the trial court's finding the bank was aware of this limitation upon Reynolds' authority. It was in accordance with the arrangement for the account at the time it was opened and the practice that prevailed for many years thereafter until Reynolds turned embezzler.

The present case is somewhat like Brannen v. State Exchange Bank, 190 Iowa 630, 635, 636, 180 N.W. 886, 888, although the bank there was more culpable than defendant here. These two sentences from the cited opinion may be repeated: "It is elementary that the act of an agent not within the scope of his authority does not bind his principal. * * * A court must be governed by the principles of the law, and not by the hardships of any case to which those principles apply."

Several precedents of this kind are cited in annotations, 12 A. L. R. 111, 115; 94 A. L. R. 555, 557 and 37 A. L. R.2d 453, 464. See Beacon Chocolate Co. v. Bank of Montreal, supra, 7th Cir., Ill., 14 F.2d 599 (distinguishing Santa Marina Co. v. Canadian Bank of Commerce, 9th Cir., 254 F. 391, cited by defendant); Merchants & Manufacturers Assn. v. First Nat. Bank, 40 Ariz. 531, 14 P.2d 717; National Union Bank v. Miller Rubber Co., 148 Md. 449, 129 A. 688; Wagner Trading Co. v. Battery Park Nat. Bk., 228 N. Y. 37, 126 N.E. 347, 9 A. L. R. 340, and annotation, 346; Industrial Plumbing & Heating Supply Co. v. Carter County Bank, 25 Tenn. App. 168, 154 S.W.2d 432.

9 C. J. S., Banks and Banking, section 354e, page 726, states: "However, the bank will be liable for losses resulting to such a [corporate] payee for permitting its representative to deposit the check to his personal account, knowing that he is without authority."

■ 7 Am. Jur., Banks, section 526: "It is well settled generally that the signature upon which a depositor is to be bound and the bank is to be authorized to disburse his money may be whatever they agree on."

See also Restatement Agency 2d, section 311.

The precedents defendant cites in support of this assigned error are distinguishable on the facts.

III. Error is asserted in the trial court's holding no account stated resulted from plaintiff's failure to object to the monthly bank statements. This holding was placed upon two grounds. First, plaintiff is not objecting to the statements; the checks the bank charged against the account and the deposits credited to it were for the correct amounts; the balances were correct; plaintiff is objecting to unauthorized payments by defendant of items which never went into or through the account. Second, the items making up each deposit were not stated; plaintiff did not know the true items that should have been credited to its account; it therefore did not agree to those items.

Defendant argues plaintiff was charged with knowledge of the checks Reynolds received and failed to deposit to its account because, it is said, the knowledge of Reynolds must be imputed to his employer. Thus, it is argued, the defense of account stated was established as a matter of law. We are not persuaded defendant is entitled to a reversal because of this assigned error.

■ An account stated is an agreement between parties who have had monetary transactions that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, to pay such balance. Hanson v. S. & L. Drug Co., 203 Iowa 384, 386, 212 N.W. 731; 1 C. J. S., Account Stated, section 1. See also 1 Am. Jur.2d, Accounts and Accounting, section 28.

■ "An account stated * * * properly exists only where accounts have been examined and the balance admitted as the true balance between the parties, * * *." 1 Am. Jur.2d, Accounts and Accounting, section 21, page 396.

■ "A depositor is not concluded by the bank's statement where he is ignorant of the facts and cannot reasonably be expected to know them. The statements of account charged the

depositor with the knowledge which an examination of the statements themselves would disclose." Fitzgibbons Boiler Co. v. National City Bank, 287 N. Y. 326, 334, 39 N.E.2d 897, 901. An account stated depends upon intent and knowledge. United States Fidelity & Guaranty Co. v. Anderson Constr. Co., 9th Cir., Wash., 260 F.2d 172, 177. See also McCarty v. First National Bank, 204 Ala. 424, 85 So. 754, 15 A. L. R. 153, 157, 158, and annotation, 159; 1 Am. Jur.2d, Accounts and Accounting, section 42.

The claim of an account stated was an affirmative defense which defendant was required to prove by a preponderance of the evidence. Wormhoudt Lbr. Co. v. Union Bank & Trust Co., 231 Iowa 928, 935, 2 N.W.2d 267, 271; 9 C. J. S., Banks and Banking, section 327a, page 659. If it be assumed, without so deciding, a finding in defendant's favor on this issue was permissible, we must hold such a finding was not required as a matter of law, as defendant argues.

The defense of account stated in cases of this general class is closely related to the defense the depositor was negligent in not sooner discovering the fraud perpetrated on it by the dishonest employee and reporting it to the bank so it could take whatever steps were open to it for its protection. A bank which is not itself negligent may justify payments from a depositor's account by showing he was negligent in carrying out some duty he owed the bank in such a way as to cause the improper payment. Detroit Piston Ring Co. v. Wayne County and Home Sav. Bk., 252 Mich. 163, 233 N.W. 185, 75 A. L. R. 1273, 1280, and citations.

C. E. Erickson Co. v. Iowa National Bank, 211 Iowa 495, 230 N.W. 342, is the principal Iowa case cited by defendant in support of this assigned error. The defense there was that the depositor was negligent in not sooner discovering the fraud practiced upon it when a trusted employee padded the payroll. We held the defense should have been submitted to the jury and the depositor was not entitled to a directed verdict against the bank. The decision does not go to the extent of supporting defendant's second assigned error. Language in the Erickson opinion on the point on which defendant here relies is questioned, although the

decision is not overruled, in Home Indemnity Co. v. State Bank, 233 Iowa 103, 161, 166, 8 N.W.2d 757, 788, 791.

In Wormhoudt Lbr. Co. v. Union Bank & Trust Co., 231 Iowa 928, 935, 2 N.W.2d 267, 271, one of two payees of eight checks endorsed the names of both payees without authority of the other, the drawee bank cashed them and charged them to the drawer's account. The drawer assigned her claim against the bank to the payee whose name was endorsed without authority and it recovered from the bank for paying out its depositor's money without authority. One defense was that the depositor was negligent as a matter of law in failing to object to the unauthorized endorsements within a reasonable time after her monthly bank statements and canceled checks were furnished her. We held the testimony was sufficient to support the trial court's finding the depositor was not thus negligent.

Of a similar defense Cole v. Charles City National Bank, 114 Iowa 632, 635, 87 N.W. 671, 672, holds, "Whether plaintiff, in the exercise of due diligence, might sooner have discovered his rights, was a question peculiarly for the jury. Doubtless it was plaintiff's duty to examine his passbook and vouchers from time to time [citation]. But, with the passbook in the condition we have stated, it was for a jury to say what knowledge it would or should have conveyed to him."

Here the monthly bank statements were sent to plaintiff's Alden office. There is no evidence anyone connected with plaintiff, other than Reynolds, had any knowledge defendant had cashed checks payable to plaintiff. The bank statements were not incorrect in this respect. Plaintiff was not chargeable with knowledge of Reynolds' fraudulent conduct. It may be conceded, as defendant contends, plaintiff was chargeable with knowledge of such facts as an honest agent, unaware of Reynolds' wrongdoing, would acquire when examining the bank statements within the scope of his employment. C. E. Erickson Co. v. Iowa National Bank, supra, 211 Iowa 495, 503, 230 N.W. 342; 9 C. J. S., Banks and Banking, section 356d(2), page 746; 7 Am. Jur., Banks, section 513; Annotations, 15 A. L. R. 159, 163; 67 A. L. R. 1121, 1124; 103 A. L. R. 1147, 1148. We cannot say as a matter of law such an honest agent would necessarily have dis-

covered Reynolds' fraud sooner than it was discovered and thereby have prevented loss to defendant.

Benge v. Michigan National Bank, 341 Mich. 441, 67 N.W.2d 721, 50 A. L. R.2d 1108; National Surety Co. v. President and Directors of Manhattan Co., 252 N. Y. 247, 169 N.E. 372, 374, 67 A. L. R. 1113; Shipman v. Bank of State of New York, 126 N. Y. 318, 27 N.E. 371, 373, 374, 12 L. R. A. 791, 22 Am. St. Rep. 821, also lend support to our conclusion on this branch of the appeal.

IV. Defendant's assigned error in the trial court's failure to dismiss plaintiff's petition for claimed insufficient evidence cannot be sustained. It is argued there is no evidence of any contract that defendant would not cash checks payable to plaintiff. The trial court found there was such an agreement and we cannot say it is without substantial support in the evidence. On this question of course we must view the evidence in the light most favorable to plaintiff.

One count of plaintiff's petition alleges defendant's payment of the checks was wrongful and "contrary to its contractual obligation to plaintiff." Defendant moved to strike the quoted language as an opinion and conclusion. The court ruled it would be proper to allege a breach of a contractual obligation, either express or implied, and a motion to strike was not a proper method of questioning sufficiency of the allegation. The ruling is not assigned as error. We may observe many decisions hold a bank impliedly contracts to pay out money of a depositor in accordance with his order or directions. Shipman v. Bank of State of New York, cited last above; McCornack v. Central State Bank, 203 Iowa 833, 839, 211 N.W. 542, 52 A. L. R. 1297; 7 Am. Jur., Banks, section 506; 9 C. J. S., Banks and Banking, section 333.

V. The court's findings of fact, conclusions of law and judgment do not expressly state upon which of the two counts of plaintiff's petition it was entitled to recover. Defendant argues that if plaintiff was not entitled to recover upon either count a new trial should be granted, even though recovery might be proper under the other count.

We refer in the preceding Division IV hereof to the

fact one count of plaintiff's petition is based on defendant's payment of the checks "contrary to its contractual obligation to plaintiff." The count does not state whether such obligation was express or implied. Plaintiff's other count alleges violation of an express oral contract. It is well settled a plaintiff may, in separate counts, declare upon an express and an implied contract and have both issues submitted to the fact finder if the evidence is sufficient to support both. Ransom-Ellis Co. v. Eppelsheimer, 205 Iowa 809, 218 N.W. 566; Donahoe v. Gagen, 217 Iowa 88, 90, 250 N.W. 892; 17 C. J. S., Contracts, section 569c, page 1205. See also Eaves v. City of Ottumwa, 240 Iowa 956, 969, 38 N.W.2d 761, 768, 11 A. L. R.2d 1164. Of course a plaintiff may not recover under both counts.

There are at least two answers to this assigned error. First, the evidence was sufficient for recovery under either count. Second, as indicated in Division IV, it fairly appears from the findings the court found substantial evidence of the alleged express agreement.

We may observe defendant made no motion under rule 179(b), Rules of Civil Procedure, to enlarge or amend the findings. See in this connection Donahoe v. Casson's Market, 248 Iowa 1106, 1107, 84 N.W.2d 29, 30.

VI. Error is assigned in allowing interest from October 10, 1959, rather than from May 12, 1961, date of the judgment, on the amount of the recovery. The earlier date is when plaintiff discovered Reynolds' misappropriations over the preceding 18 to 20 months. It is argued the amount of plaintiff's loss was not sufficiently definite prior to the judgment so the claim could be considered liquidated. It was stipulated Reynolds replaced $2500 of the money he embezzled. Just when this was done does not appear.

We think defendant is not entitled to complain of the date from which interest was allowed. Because of a breach of defendant's contract with its depositor, as the court found, plaintiff was deprived of the money paid out to Reynolds over a long period during which no interest was allowed. We understand defendant promptly collected the amounts it paid out from the makers of the checks or the banks on which they were drawn. When Reyn-

olds' shortages came to light in October 1959 the wrongfulness of its payments to him became definitely known to defendant.

The general rule is interest runs from the time the money becomes due and payable. 30 Am. Jur., Interest, section 40. Interest may be allowed on unliquidated claims whenever it appears the damage was complete at a particular time. General Mills v. Prall, 244 Iowa 218, 221, 56 N.W.2d 596, 598, and citations. It has been held the time from which interest runs on an unliquidated claim arising out of contract rests in the sound discretion of the court. 47 C. J. S., Interest, section 41a.

"If money is wrongfully obtained or held, however, interest begins to run on the demand from the time of taking or wrongful withholding. So, where property is obtained under such circumstances as to amount to a conversion, and the owner elects to waive the tort and sue on an implied contract, it has been generally held that interest runs from the time of taking, although it has also been held that interest does not begin to run in such case until the time of election." 47 C. J. S., Interest, section 44, page 55. Several cases of this kind observe that a bank's payment of checks on an unauthorized endorsement and collecting the amounts thereof from a depositor's account amounts to conversion of the checks.

See also on this question of interest annotation, 87 A. L. R. 649, 652–656.

Of course we do not hold plaintiff is entitled to interest from an earlier date than the judgment fixes. Plaintiff has not appealed and that question is not before us.

VII. Defendant was the drawee bank of 14 of the checks it permitted Reynolds to cash. Its final assigned error is it is not liable to plaintiff for cashing these checks in the absence of its acceptance or certification thereof and that payment to Reynolds did not constitute acceptance or certification. The contention is based on Code section 541.190 of the Negotiable Instruments Law which provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

It is doubtless now true the holder of a check cannot

compel the drawee bank to pay it until it has been accepted or certified. Thus plaintiff could not have successfully sued defendant on these 14 checks. 7 Am. Jur., Banks, sections 533, 545; 9 C. J. S., Banks and Banking, section 366. We may also agree the unauthorized payment of the checks to Reynolds did not amount to acceptance so as to make defendant liable to plaintiff on the checks.

But it does not follow that plaintiff is not entitled to maintain this action against defendant, not on the checks themselves but for paying them to Reynolds and charging the amounts thereof to the drawer's accounts, contrary to its express or implied contract with plaintiff or, what amounts to the same thing, with knowledge Reynolds was without authority to receive the cash on the checks. Nothing in Code section 541.190 or other provision of the Negotiable Instruments Law prevents such an action. Many decisions allow recovery under comparable facts. Some are placed on the ground of conversion, some are actions for money had and received and in some the form of action is not definitely considered. See annotations, 14 A. L. R. 764; 69 A. L. R. 1076; 137 A. L. R. 874. See also 7 Am. Jur., Banks, section 595, page 432; 9 C. J. S., Banks and Banking, section 354 e and f, pages 726-728.

Precedents which support our holding include Fidelity & Deposit Co. of Maryland v. Bank of Charleston, 4th Cir., S. C., 267 F. 367; Merchants & Manufacturers Assn. v. First Nat. Bank, supra, 40 Ariz. 531, 14 P.2d 717; Louisville & N. R. Co. v. Citizens and Peoples Nat. Bk., 74 Fla. 385, 77 So. 104, L. R. A. 1918C 610; James v. Union Nat. Bk., 238 Ill. App. 159; McFadden v. Follrath, 114 Minn. 85, 130 N.W. 542, 544, 37 L. R. A., N. S., 201; Hartford Acc. & Indem. Co. v. Bear Butte Valley Bank, 63 S. D. 262, 257 N.W. 642, 643, 644.

The precise form of this action seems unimportant in view of rule 67, Rules of Civil Procedure, which provides: "All * * * technical forms of action or pleading, are abolished. The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure a just, speedy and inexpensive determination of all controversies on their merits."

1294

We have considered the authorities defendant cites on this branch of the case. Miller v. Northern Bank, 239 Wis. 12, 15, 300 N.W. 758, 759, 137 A. L. R. 870, 873, is typical of the precedents cited. That opinion points up the distinction between the present case and the one there decided. The cited action against the drawee bank was by the payee of a check on which her endorsement had been forged. The opinion states, "the forgery was not done by an agent of respondent [plaintiff-payee]; and there was no allegation that appellant [drawee-bank] knew or should have known the person cashing the check had no authority to do so as was true in many of the cases in which recovery was allowed on a conversion theory."

We should perhaps add that some of the checks which were really the property of plaintiff were taken in Reynolds' name rather than plaintiff's. Recovery was denied on these checks on the ground it was not shown defendant knew plaintiff was the real owner thereof.

We find no reversible error in any of the respects plaintiff has assigned and argued.—Affirmed.

All JUSTICES concur except MOORE, J., who takes no part.