[Civil No. 3176. Filed October 3, 1932.]

[14 Pac. (2d) 717.]

MERCHANTS & MANUFACTURERS ASSOCIATION, a Corporation, Appellant, v. THE FIRST NATIONAL BANK OF MESA, ARIZONA, a Corporation, Appellee.

Mr. K. T. Palmer, for Appellant.

Messrs. Silverthorne & Van Spanckeren, for Appellee.

ROSS, J.—This action was brought by the Merchants & Manufacturers Association, an Arizona corporation, against the defendant bank to recover $968.75 paid by the defendant to one L. F. Nachtweih upon sixteen checks payable to the order of plaintiff. Fourteen of these checks were indorsed in plaintiff's name "by L. F. Nachtweih," and two "by Clara Livingston." The questions involved are the authority of Nachtweih to indorse in plaintiff's name three of such checks, and the authority of Livingston to indorse the two she indorsed. The eleven other checks indorsed by Nachtweih the evidence conclusively shows he was authorized to indorse in behalf of plaintiff, the question as to them being whether such authority was for the purpose of deposit only and, if so, whether defendant had actual knowledge of such limited authority when it cashed them.

Eleven of the checks were drawn against the Valley Bank of Mesa by its customers, and five against defendant by its customers. The Valley Bank of Mesa paid the checks drawn on it to the defendant, and the defendant credited itself with those drawn against it.

The case was tried to the court without a jury and resulted in a verdict and judgment in favor of the defendant. The plaintiff has appealed and contends by its assignments that the evidence does not support the judgment and that the judgment is contrary to the law.

As the question of agency is one of fact, we state the facts. The plaintiff was engaged in a general collection and credit or mercantile reporting business, with its principal office in Phoenix. In February or March of 1927 it appointed Nachtweih its agent in Mesa, to solicit business but not its agent to make collections. Nachtweih rented rooms of defendant in its bank building in Mesa and began a general collection business, and in that connection assumed,

without authority from plaintiff, to sign letters in plaintiff's name and to receive payment of collections and dues in the form of checks payable to plaintiff's order. He opened a personal account with the defendant and on different occasions, before August 1, 1927, presented to defendant three checks, totaling $215.63, for membership dues in plaintiff and for commissions on collections payable to the order of plaintiff, indorsed variously as "Merchants & Manufacturers Association by L. F. Nachtweih," "Merchants & Mfrs. Assn by L. F. Nachtweih," and "M & M Assn by L. F. Nachtweih," and received from defendant either the cash or a credit to his personal account.

On August 1, 1927, plaintiff, for the convenience of its Mesa members, established a branch office in Mesa and appointed Nachtweih local manager thereof and enlarged his authority to make collections, to accept checks therefor, and to indorse them for deposit with defendant for plaintiff's account. Preparatory to and before opening the Mesa branch office, plaintiff on July 25, 1927, wrote defendant a letter, of which the following is a copy:

"First National Bank
    "Mesa, Arizona.
"Gentlemen: Attn. Mr. Jennings Johnson.

    "Pursuant to our recent telephone conversation, we are enclosing properly signed deposit card for your records. All checks issued by this Association will be signed 'Merchants & Manufacturers Association by D. M. Gillan, Secretary.' No other person is authorized to sign checks for this Association or have anything to do with the funds of this Association.

    "Mr. L. F. Nachtweih will have charge of the Mesa office with the nominal title of Local Manager and he will make reports direct to the main office in Phoenix of all matters pertaining to the branch of this Association at Mesa, but he will not handle the

finances nor will he or anyone else have authority to sign checks other than the writer.

"Please send to this office at your earliest convenience blank checks, three to a page, printed as follows:

"Merchants & Manufacturers Association
"By ————, Secretary.
"Yours very truly
"MERCHANTS & MANUFACTURERS ASS'N
"By D. M. GILLAN, Secretary."

This letter was inclosed in a stamped envelope, sealed and addressed to defendant at Mesa, and deposited in the United States mail on or about the day of its date. On this envelope was a request to return within five days. A few days thereafter the check-book requested in the letter was brought to plaintiff in Phoenix by Nachtweih. It had three checks per page and otherwise conformed to the specifications set out in the letter. Plaintiff did not receive from defendant an acknowledgment of such letter. The defendant's cashier testified that neither the letter nor the deposit or signature card was on file in the bank and that he had never seen them; that it was customary to file such instruments and to acknowledge their receipt promptly. This witness also testified that he thought the Merchants & Manufacturers Association was Nachtweih's "outfit"; that Nachtweih conducted the banking affairs of the Merchants & Manufacturers Association in the bank.

The record discloses that Nachtweih made many deposits of checks, in which plaintiff was payee, to plaintiff's account with defendant during the time that he was plaintiff's agent at Mesa, and that plaintiff drew upwards of sixty checks against the account on blank checks furnished it by defendant, signed with the printed name of plaintiff, "By D. M. Gillan, Secretary." Nachtweih, in his weekly or bimonthly or monthly reports to plaintiff, did not list any of

such converted checks, nor did defendant's monthly bank statements to plaintiff reflect them, or any of them. Their conversion was not discovered until after Nachtweih had ceased to work for plaintiff.

A check made payable to an individual or corporation is an order on the drawee to pay the amount of such check out of the drawer's funds to the payee, and can be paid to no one else without the payee's consent or authority. If the drawee of the check pays it, or anyone else, bank or individual, in the course of business takes it with an unauthorized or forged indorsement, it is at the risk of having to make it good to the payee. If the payee, as was the case here, is a corporation, the check can be indorsed only by an authorized agent of the corporation. The business world, and more especially the banking world, knows that corporations can act only by and through agents, and it also knows, or should know, that the mere fact that a person is in possession of a check payable to the order of a corporation is not proof of his right to indorse it. On the contrary, it is put upon notice that the check and its proceeds belong to the corporation and that the possessor may or may not have authority to indorse it. In such circumstances, common prudence would dictate an inquiry and investigation into the authority of such person to indorse the check before paying it or accepting it in trade. "The well-settled rule" is "that authority to collect does not imply authority to indorse negotiable paper received in payment." It is also a "well-established rule that the authority of an agent to indorse negotiable paper is a very responsible power, not lightly to be presumed or implied." *Arcade Realty Co.* v. *Bank of Commerce,* 180 Cal. 318, 181 Pac. 66, 12 A. L. R. 102.

Mechem, in his learned work on Agency (vol. 1, 2d ed., § 969), says the power to indorse negotiable

paper "can exist only when it has been directly conferred or is warranted by necessary implication."

In 2 Corpus Juris 636, section 280, the rule is stated as follows:

"Commercial paper, such as bills, notes, and checks, passes current to a limited extent like money, and accordingly power to an agent to execute or indorse it is to be strictly limited, and will never be lightly inferred, but ordinarily must be conferred expressly."

Michie on Banks and Banking, volume 6, page 127, section 80, says:

"A bank receiving for collection checks payable to a corporation with unauthorized indorsements stands in the same position with regard to indorsements as persons originally cashing checks, and is liable to the corporation for the amount of the checks. And neither good faith nor lack of notice of the collecting bank that the indorsement was unauthorized is material in an action against the bank for conversion. Nor is the negligence of the corporation a defense to such an action against the bank."

There is absolutely no evidence whatever that Clara Livingston had any authority at any time to indorse plaintiff's checks, and it is equally clear that Nachtweih had no such authority prior to August 1st, when he was made plaintiff's local manager of the Mesa branch office.

We have no trouble in holding that plaintiff should have been given judgment for the amount of these checks.

The plaintiff by the institution of this action against defendant not only ratified the collection of checks from drawee by defendant, but also, we think, ratified the drawer's payment of commissions and dues to Nachtweih, even though at the time he was without authority to make collections or accept dues from defendant's members. *Independent Oil Men's*

*Assn.* v. *Ft. Dearborn Nat. Bank,* 311 Ill. 278, 142 N. E. 458.

As to the other eleven indorsements, there is no contention that they were forgeries or unauthorized by plaintiff. While Nachtweih's authority to indorse checks in behalf of plaintiff is admitted, it is contended that such authority was only for the purpose of deposit with the defendant and that defendant had knowledge of his limited power to indorse. This knowledge plaintiff contends was conveyed to defendant by its letter of July 25th, a copy of which is above set forth. If defendant received such letter, it seems to us it was informed that no one but D. M. Gillan, the plaintiff's secretary, had authority to sign its checks "or have anything to do with the funds of this Association" and, specifically, that Nachtweih "will not handle the finances" of the association. These limitations upon Nachtweih's authority, while not taking from him the power to do all necessary things to carry out his duty of making collections and depositing them for plaintiff, including the indorsement of negotiable paper, do most certainly inform the defendant he is not to use or appropriate any of its funds. With such notice defendant is in no position to say it was not advised as to Nachtweih's limited authority and that it acted in good faith in paying its customer's money to him instead of depositing it to the plaintiff's credit.

But it is said by defendant that the evidence as to whether it received the letter of July 25th or not was in conflict, and the decision of the trial court on the general issue necessarily included a finding that defendant did not receive the letter and is decisive in favor of defendant. This proposition is correct when there is a conflict in the evidence. The arrangement by plaintiff with defendant to become a customer of the latter was made nearly four years before the trial of the case. Such arrangement was the usual one,

that is, the Merchants & Manufacturers Association, so that its funds might not be paid to or handled by someone without authority, sent to the bank its deposit or signature card, on a form furnished by the bank, and the bank, so as to protect itself against paying the customer's funds to the wrong person, either acquiesced in or required such precaution. The fact that this deposit card and the letter in which it was inclosed were not on file when the cashier of the defendant looked for them, preparatory to testifying, four years after they were mailed, is no evidence that they were not received by the defendant. There were other employees of the bank, tellers and bookkeepers, and the fact that the cashier had not seen these papers is no evidence that such other employees had not seen them. Then there is this unexplainable fact, except upon the theory that the letter was received by defendant, that the check-book requested in the letter was sent to plaintiff shortly after the letter was mailed. And the further fact that beginning in August the defendant paid checks of plaintiff signed "Merchants & Manufacturers Association by D. M. Gillan, Secretary." One wonders how defendant, if the letter was not received, learned the plaintiff's signature.

There is a strong presumption that a letter properly addressed, stamped and deposited in the United States mail will reach the addressee, and a verdict of a jury or the finding of the court in opposition to this inference of fact, when based on no evidence of nonreceipt, is certainly against the weight of the evidence. 22 C. J. 98, § 38. The presumption that defendant received the letter is aided by the fact that, although the envelope bore a request for the return of the letter within five days, it was not returned, but a request in the letter was complied with by defendant in sending the check-book to plaintiff. And the conduct of defendant in honoring checks

signed in accordance with deposit or signature card is a strong circumstance that defendant received the letter. In view of the weak and equivocal evidence of the nonreceipt, we think if the court did actually find, or intend to find, that defendant did not receive the letter of July 25th, such finding was not only against the evidence but without support in the evidence.

In view of the information conveyed to defendant in letter as to limits of Nachtweih's right to indorse paper for plaintiff, the indiscriminate cashing of plaintiff's checks on the indorsement of Nachtweih was a reckless disregard of the bank's duty to the plaintiff, for which under the law it should be made to account as for money had and received. The rule is that one who accepts in good faith a check from an agent who has authority to make in form a general indorsement, but is required to deposit the proceeds to the credit of the principal, obtains a good title to the check although the agent misappropriates the proceeds. *Kansas City, M. & B. R. Co.* v. *Ivy Leaf Coal Co.,* 97 Ala. 705, 12 South. 395; *Wedge Mines Co.* v. *Denver Nat. Bank,* 19 Colo. App. 182, 73 Pac. 873; *McCabe Hanger Mfg. Co.* v. *Chelsea Exchange Bank,* 183 App. Div. 441, 170 N. Y. Supp. 759. But if the limited authority to indorse for deposit to the principal's account is known to one accepting paper, he is bound by such knowledge. It is said in 2 Corpus Juris 569, § 210:

"Instructions modifying or limiting the authority of the agent, which are known to a person dealing with him, are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with the agent contrary thereto. . . . If specific instructions are brought home to the knowledge of a third person dealing with the agent it cannot matter whether he is a general or a special agent; in either case his power to bind

his principal will be limited by these known instructions or limitations.''

The judgment is reversed and the cause remanded, with directions that judgment be entered for plaintiff for the full amount sued for.

McALISTER, C. J., and LOCKWOOD, J., concur.