680 P.2d 1250

**B. Michael McKINLEY, Plaintiff-Appellant,**

v.

**TOWN OF FREDONIA, a municipal corporation, Robert Harris, Darol Heaton, Anthony A. Judd, Dixie Lee Judd and Don Mackelprang, individually and as Mayor and Councilmen of the Town of Fredonia, Defendants-Appellees.**

**No. 1 CA–CIV 5950.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 23, 1984.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Richard McC. Shannon, Larry L. Smith,

and Brian C. Bond, Phoenix, for plaintiff-appellant.

Jennings, Strouss & Salmon by Neil Vincent Wake, Michael W. Mullane, and Roxana C. Bacon, Phoenix, for defendants-appellees.

## OPINION

CORCORAN, Judge.

The issue presented by this appeal is whether the trial court abused its discretion by refusing to set aside an order dismissing a complaint without prejudice for lack of prosecution. The procedural and factual history of this matter are as follows:

On November 1, 1978, B. Michael McKinley, appellant, filed a complaint against the Town of Fredonia and various of its officials (the town), seeking recovery for the improper withholding of wages allegedly due appellant as a result of his employment as the town marshal. The complaint alleged that McKinley was owed wages in the amount of $11,888.69 which, when trebled pursuant to A.R.S. § 23–355, amounted to $35,666.07.

McKinley's complaint was filed in Pinal County by the late Samuel T. Ishmael, an attorney practicing law in that county. The town is located in Coconino County. The town thereafter moved for a change of venue from Pinal County to Coconino County. That motion was granted and the town subsequently filed an answer on May 24, 1979.

Approximately one year later on May 14, 1980, a letter to McKinley's then-counsel, Mr. Ishmael, was prepared by the clerk of the Coconino Superior Court. The letter was a notice that the case was being placed on the inactive calendar for two months subject to dismissal if a certificate of readiness was not filed by July 17, 1980. There is no copy of this letter in the record on appeal. The foci of this appeal are whether the clerk's office sent the letter to Mr. Ishmael and whether he received it.

No certificate of readiness was filed and on July 17, 1980, the trial court entered an order dismissing McKinley's claim without prejudice pursuant to Rule 5(e), Uniform Rules of Practice of the Superior Court of Arizona. Neither the order itself nor the record indicate that copies of the order were mailed to counsel.

In September of 1980, Mr. Ishmael committed suicide. On December 4, 1980, McKinley's present counsel was substituted. Apparently, at that time McKinley's new counsel was informed that the case had been dismissed. McKinley immediately filed a motion to set aside the order of dismissal. After hearing oral argument, the trial court refused to set aside the dismissal and McKinley has appealed from that decision.

Apparently, after the dismissal, McKinley refiled a complaint against the town based on the same claim. The statute of limitations had not yet run on the underlying contract claim for wages, but the limitation period had expired on the statutory treble damages claim. A.R.S. § 12–541(3) (one year). Consequently, this appeal will, in effect, determine if McKinley is entitled to seek treble damages.

On appeal, McKinley argues that the purpose of rule 5(f) is to insure that a party receives notice that his claim will be dismissed, pursuant to rule 5(e), unless the required certificate is filed in time. McKinley contends that no evidence of actual mailing of the notice was shown to the trial court, but that the trial court was presented with an uncontroverted affidavit by Mr. Ishmael's former secretary indicating that no notice was ever *received*. Therefore, McKinley maintains that the trial court abused its discretion by refusing to set aside the order of dismissal because the dismissal itself was entered without prior notice to McKinley's then counsel.

The town, on the other hand, argues that proof of the *mailing* of the letter was shown to the trial court, and that a presumption arises that the notice was received. Additionally, the town maintains that even if the presumption was overcome by the secretary's affidavit, proof of the

mailing of the notice raised a natural inference that the notice was received. The town concludes that, since at worst, the trial court was faced with choosing between two equally plausible competing inferences (lack of receipt of notice versus proof of the mailing thereof), the trial court's decision must stand because of the well-established rule that the appellate courts will affirm any trial court ruling where there is any evidence or rational inference supporting that ruling.

However, there appears to be a critical flaw in the town's position. In *Thompson v. Mecey*, 101 Ariz. 125, 416 P.2d 558 (1966), the supreme court stated: "The facts show that notice was mailed by the clerk of the court. *Upon such proof of mailing*, a presumption arises that the notice was received." 101 Ariz. at 126, 416 P.2d at 559. (Emphasis added.) *See Merchants & Manufacturers Ass'n v. First Nat. Bank*, 40 Ariz. 531, 539, 14 P.2d 717, 720 (1932); Udall, *Arizona Law of Evidence* § 191 at 416 (1960). The record is devoid of any such proof of mailing in this instance. No affidavit from the clerk's office attesting to the mailing was presented to the trial court, nor did the town offer any other documentation, such as its own notice of motion for dismissal, which would support an inference of mailing. In its answering brief, the town argues that the clerk's file copy of the letter "shows on its face that the original was mailed to Mr. Ishmael." We are unable to confirm that statement because the clerk's letter has not been presented to us as part of the record. It is doubtful, though, that the clerk's letter would show conclusively on its face that a mailing to Mr. Ishmael had occurred, unless a return receipt was affixed to that letter. This, of course, has never been argued.

The town also alleges in the answering brief that its attorneys received a copy of the letter from the clerk to Mr. Ishmael (and a copy is included as an appendix to its brief). If this copy represents the town's notice of the dismissal, there is nothing in the record which shows that it was ever brought to the attention of the trial court.

The town contends, however, that no actual proof of mailing was required because McKinley conceded the fact of the mailing. In support of this purported concession, it relies heavily on statements made in McKinley's motion to set aside the dismissal. A fair reading of those statements, though, does not indicate that McKinley conceded that a letter was in fact mailed from the clerk's office to Mr. Ishmael. In the motion, which was filed shortly after present counsel was retained, McKinley attempted to reconstruct the procedural history of the case based on what appeared to be in the record. Consistent with that attempt, McKinley conditioned the statements in the motion by stating, for example, that "it *appears* that ... the Clerk of the Superior Court, sent a letter to a Samuel Ishmael dated May 14, 1980" (Emphasis added.) In McKinley's reply memorandum in support of his motion he indicates that the letter was "supposedly sent."

Clearly, there is no stipulation regarding the mailing of the letter and we agree with McKinley that no binding admission regarding the mailing can be found in the language of the motion. See rule 80(d), Arizona Rules of Civil Procedure. Consequently, nothing was presented to the trial court which could sustain the town's theories of presumption of mailing or natural inference thereof. Additionally, we note that "a party who asserts the affirmative of an issue has the burden of proving it." *Black, Robertshaw, Frederick, Copple & Wright, P.C. v. United States*, 130 Ariz. 110, 114, 634 P.2d 398, 402 (App.1981). Although it is true that the evidence must be viewed in the light most favorable to upholding the judgment, the judgment will be affirmed only where there is reasonable evidence to support it. *O'Neal v. Horne*, 127 Ariz. 330, 331, 620 P.2d 709, 710 (App. 1980); *Bender v. Bender*, 123 Ariz. 90, 92, 597 P.2d 993, 995 (App.1979). Here, there was no evidence to support the trial court's ultimate decision that the notice was in fact mailed.

However, even if we assume that proof of mailing the notice was satisfied in this

instance, further considerations make it difficult to affirm the trial court's decision. The town's contention that a presumption of receipt of notice was available in this matter to support the trial court's decision must fail. As defined in *In re Westfall's Estate,* 74 Ariz. 181, 245 P.2d 951 (1952), "[a] presumption in the strict legal meaning of the word, is a rule of law that in the absence of any evidence to the contrary the trier of fact is compelled to reach." 74 Ariz. at 186, 245 P.2d at 955. In *Seiler v. Whiting,* 52 Ariz. 542, 84 P.2d 452 (1938), the court stated with respect to presumptions that "whenever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to follow the usual rules of evidence in reaching their ultimate conclusion of fact." 52 Ariz. at 548-49, 84 P.2d at 454-55. Accordingly, the affidavit by Mr. Ishmael's former secretary controverting receipt of the letter dispels any presumption of receipt that otherwise might have existed [1]. On the issue of receipt of the clerk's letter, no deposition or "live" testimony was presented to the trial court; only the secretary's affidavit was considered. The affidavit was uncontroverted, uncontradicted, unimpeached, and therefore must be accepted as true. *Rawlins v.*

*Wilson,* 66 Ariz. 267, 269, 187 P.2d 322, 323 (1947); *Rich v. Tudor,* 123 Ariz. 393, 599 P.2d 846 (App.1979).

That leaves us with the town's remaining argument that, absent a presumption of receipt, the natural inference of receipt could properly have been chosen by the trial court as being more persuasive than the opposing inference set forth in the affidavit. This brings us to the core of this dispute because we recognize that decisions of this kind are within the sound discretion of the trial court. *Ursel v. Pizzo,* 126 Ariz. 316, 614 P.2d 858 (App.1980); *Black v. Greer,* 17 Ariz.App. 383, 498 P.2d 225 (1972). Exactly when the exercise of that discretion has been abused oftentimes is a difficult decision to make. However, we find guidance from *Walker v. Kendig,* 107 Ariz. 510, 489 P.2d 849 (1971). In that case, a claim was dismissed without prejudice pursuant to rule 5(d). The plaintiff's attorney moved to vacate and filed an affidavit stating that he failed to prevent the dismissal because of his physical incapacitation resulting from Valley Fever. Plaintiff's counsel maintained that he was often absent from the office and able to carry on only a limited practice. Consequently, the notice of dismissal was placed in counsel's

---

1. The affidavit by the secretary executed on December 29, 1980, states:

1. That she is the secretary/receptionist for Howard Karman and was involved with receiving mail for the law firm of Karman & Ishmael in 1979 and 1980.

2. That the law firm of Karman & Ishmael, Professional Corporation, was dissolved on August 31, 1979.

3. That thereafter correspondence directed to the law firm of Karman & Ishmael covering Mr. Ishmael's cases would be received by your affiant.

4. That she has no recollection of receiving anything directed to Mr. McKinley covering his case entitled *McKinley v. Town of Fredonia* from the Clerk of the Superior Court of Coconino County, Arizona.

5. That your affiant opened all mail that was directed to Karman & Ishmael, P.C. even after the dissolution of the professional corporation on August 31, 1979.

6. That the address of Karman & Ishmael was P.O. Box 7, Casa Grande, Arizona 85222.

7. That if correspondence was directed to Karman & Ishmael, P.C. and it covered a case handled by Samuel T. Ishmael it would have been noted.

8. That your affiant has no recollection of receiving anything directed to Karman & Ishmael in connection with the McKinley matter against the Town of Fredonia from the Clerk of the Court.

9. Your affiant believes that if a document was sent by the Clerk of the Court to Karman & Ishmael on or about May 14, 1980, your affiant would have received it, but has no recollection and no records indicating such a document was received from the Clerk of the Court.

10. That in the Spring of 1980 Mr. Ishmael was under Federal indictment for harboring a fugitive and your affiant does not know whether he received any correspondence regarding his cases other than through this office but does not believe he established any other professional address until he moved to Phoenix in the Winter of 1979/80 at which time he entered the adjusting business.

11. That Mr. Ishmael committed suicide in September of 1980.

file without his knowledge. The trial court refused to set aside the dismissal. On appeal, our Supreme Court reversed that decision as an abuse of discretion. The court first noted that the dismissal had the same effect as a default judgment and then, borrowing language from an earlier default judgment case, the Court made the following statement:

> "The court in opening the default acted clearly within its discretion. 'The exercise of the discretion ought to tend, in a reasonable degree at least, to bring about a judgment on the very merits of the case; and when the circumstances are such as to lead the court to hesitate upon the motion to open the default, it is better as a general rule that the doubt should be resolved in favor of the application.'"

107 Ariz. at 513, 489 P.2d at 852 (*quoting Dowdy v. Calvi*, 14 Ariz. 148, 159, 125 P. 873, 878 (1912)).

The court then reiterated the well-established principle that "'[l]itigation ought not be treated as a game but should be disposed of, where possible, upon its merits.'" 107 Ariz. at 513, 489 P.2d at 852 (*quoting Treadaway v. Meador*, 103 Ariz. 83, 84, 436 P.2d 902, 903 (1968)).

Reviewing courts frequently "suggest" preferred policies to the trial courts, oftentimes in the form of dicta. Such statements are not mandates, but yet their substance should not be ignored. However, the language in *Walker v. Kendig, supra*, is not mere dicta. Because the outcome of that case hinged completely on the propriety of a particular exercise of discretion, any pronouncement by the Court respecting how that discretion should be exercised becomes an integral part of the decision. We are, accordingly, bound to apply the import of that language when faced with similar situations.

A brief review of some of the cases dealing with dismissals pursuant to rule 5 reveals that the Supreme Court's directive has been consistently followed. For example, where competent evidence has been presented that a notice was not received, the trial court's setting aside the order of dismissal is regularly affirmed. *See, e.g., Black v. Greer, supra; Thunderbird Farms v. Hernandez*, 11 Ariz.App. 383, 464 P.2d 829 (1970). Even when receipt of notice has been acknowledged, the courts will still strive to obtain judgments on the merits as evidenced by *Walker v. Kendig, supra.*

On the other hand, the trial court's refusal to set aside the dismissal order has been affirmed in what appear to be rather clearcut situations. For example, in *Ursel v. Pizzo, supra*, we found no abuse of discretion when the trial court refused to reinstate a case because the motion to reinstate did not contain any supporting memorandum and, therefore, "the required documentation was not furnished to the trial court." 126 Ariz. at 318, 614 P.2d at 860. In *Thompson v. Mecey, supra*, no abuse of discretion was found where the trial court refused to vacate the dismissal order, but the Supreme Court simply made the blanket statements that "[t]he facts show that notice was mailed by the clerk of the court," and that "[t]he record supports the trial court's finding . . . ." 101 Ariz. at 126, 416 P.2d at 559. We cannot presume what was or was not presented to the trial court in that instance, but the decision makes no reference to any affidavits or other documents being filed. The Court's use of such blunt language, however, suggests that the circumstances were not such as to lead the trial court to hesitate upon the motion.

In view of all these considerations, with particular emphasis on best serving the interests of justice, we reverse the decision of the trial court and remand this matter to the superior court with instructions to issue an appropriate order setting aside the order of dismissal.

CONTRERAS, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I dissent for two reasons. While I agree the appellant never stipulated that the clerk mailed the notice of impending dismissal to Samuel Ishmael, his reply brief

virtually concedes that when the matter was presented to the trial court everyone, including the judge, assumed that such was the case. It appears to me that had the issue been brought to proper focus the appellees might have been able to supply the proof the majority now finds missing.

Nor do I agree that the affidavit of Mr. Ishmael's former secretary is as strong as characterized. She simply says that she would have noted mail addressed to Mr. Ishmael and has no recollection of receiving such a document. She says nothing about what was done with Mr. Ishmael's correspondence or that any search for the item was undertaken with negative results. Under the circumstances, I do not believe the trial judge abused his discretion.