READING VENTURES, LTD.,
a Colorado corporation,
Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CIV.A. 96–B–885.

United States District Court,
D. Colorado.

Dec. 18, 1997.

---

J. William Callison, Faegre & Benson LLP, Denver, CO, for Plaintiff.

Arthur P. Yoon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, William G. Pharo, Asst. U.S. Atty., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this action arising under the Internal Revenue Code of the United States (IRC), 26 U.S.C. § 1 et seq., the parties, defendant United States of America (United States) and plaintiff, Reading Ventures, Ltd. (RVL) cross-move for summary judgment pursuant to Fed.R.Civ.P. 56, on RVL's claim for abatement of Internal Revenue Service (IRS) penalties. The motions are adequately briefed and oral argument will not materially aid their resolution. After consideration of the motions and briefs, I will deny the cross-motions for summary judgment.

### I.

The following facts are undisputed. Sanford Horvitz (Horvitz) is the president of RVL, a Colorado corporation. RVL's Employer's Quarterly Federal Tax Return, IRS Form 941 (Form 941) for the period ending December 31, 1993, was due on January 31, 1994. Horvitz failed to file timely the tax return due January 31, 1994, because he was out of town on business matters when the return was due. MSJ Ex. A, Horvitz Depo., pp. 17–18. Horvitz testified that he signed

the Form 941 tax return on February 3, 1994, and on the same day hand delivered it to RVL's accountant, Bruce Cantor (Cantor) at Cantor's home. *Id.* pp. 10, 13. Cantor testified that the next day, February 4, 1994, he placed the Form 941 tax return, enclosed in a properly addressed envelope bearing proper postage, in an office receptacle designated for outgoing documents. MSJ Ex. B., Cantor Depo., pp. 22–23. Cantor has no recollection as to who took the outgoing mail out of the receptacle and placed it into a post office mailing box. *Id.* at p. 23. Cantor did not certify or register the envelope containing the tax return dated February 3, 1994.

On April 18, 1994, the IRS mailed RVL a "Request for Tax Return" (April 18th request) stating that it had not received a Form 941 tax return for the period ending December 31, 1993. The April 18th request stated also that RVL had a credit balance with the IRS of $47,650 and asked that RVL complete IRS Form 9358, "Information About Your Tax Return," to explain why RVL had failed to file a Form 941 for the period ending December 31, 1993. In response to this IRS notice, Cantor mailed the IRS a copy of RVL's Form 941 for the period ending December 31, 1993, dated February 3, 1994. Canton Depo., p. 26. The IRS received the copy of this tax return on May 2, 1994. According to the IRS, this was the first and only tax return it received for RVL's employment tax liabilities for the period ending December 31, 1993. MSJ Ex. C, Barstow Declaration, ¶ 7. Based on its May 2, 1994, receipt of the tax return due on January 31, 1994, the IRS assessed RVL a 20% late-filing penalty. C/O ¶ 31; Barstow Declaration, ¶ 9.

RVL filed a request to abate the late-filing penalty which was denied by the IRS. C/O ¶¶ 27, 28. In October 1994, RVL appealed the IRS's decision not to abate the late-filing penalty. On May 30, 1995, Margaret I. Bostow (Bostow), the Appeals Officer assigned to RVL's appeal, notified RVL that its appeal was denied. On October 5, 1995, RVL paid the entire late payment penalty, $11,531.53, assessed against it. On January 16, 1996, RVL filed a Form 843 Claim for Refund and Request for Abatement, with an attached rider, explaining the circumstances surrounding RVL's late filing. On January 25, 1996, the IRS' Special Procedure Staff, Denver, Colorado, informed RVL that the IRS would not overturn the Appeals Officer's decision. This action was filed on April 15, 1996.

## II.

### SUMMARY JUDGMENT STANDARD

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 124 F.3d 1321, 1323 (10th Cir.1997).

## III.

RVL seeks to introduce extrinsic evidence to prove that on February 4, 1994, it mailed Form 941 for the period ending December 31, 1993. RVL also contends that it is entitled to invoke the common law mailbox presumption of delivery. Pltf. Opp. pp. 2–3. The United States contends that the common law mailbox rule was preempted entirely by Congress' enactment of 26 U.S.C. § 7502. Thus, according to the United States, RVL is not entitled to rely on the common law mailbox rule to introduce evidence to establish the actual mailing date of the Form 941 or to establish the IRS' receipt of it. The parties agree that in this case § 7502 does not apply because RVL did not file timely its Form 941 for the period ending December 31, 1993. I must, nevertheless, decide the question whether § 7502 preempts the application of the common law mailbox rule to untimely mailed returns because if RVL prevails, it is

liable only for the late filing penalty assessed for February, 1994, pursuant to IRC § 6651(a)(1). If the United States prevails, RVL is liable for late penalties assessed by the IRS for February, March, April, and May 1994.

## A. *IRC section 7502*

Before 26 U.S.C. § 7502 was enacted in 1954, all documents mailed by a taxpayer to the IRS were considered to have been filed with the agency when they were actually received. *United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897 (1916). This common law physical delivery rule left taxpayers vulnerable to the vagaries of the postal service. To mitigate the harshness of the physical delivery rule, federal courts, including the Tenth Circuit, routinely applied the common law mailbox rule that properly mailed documents were presumed to be received in due course by the IRS. *Carroll v. Commissioner*, 71 F.3d 1228, 1230 (6th Cir.1995) citing *Estate of Wood v. Commissioner*, 92 T.C. 793, 798–99, 1989 WL 33664 (1989); *Crude Oil Corp. v. Commissioner*, 161 F.2d 809, 810 (10th Cir.1947).

IRC § 7502 provides, in pertinent part:

**Timely mailing treated as timely filing and paying**

**(a) General Rule.—**

> **(1) Date of delivery.—**If any return ... required to be made, ... on or before a prescribed date ... is, after such ... date, delivered by United States mail to the agency, ... or office with which such return, ... is required to be filed, ... the date of the United States postmark stamped on the cover in which such return ... is mailed shall be deemed to be the date of delivery ....

> **(2) Mailing requirements.—**This subsection shall apply only if—

>> **(A)** the postmark date falls within the prescribed period or on or before the prescribed date—

>>> (i) for the filing ... of the return ..., and

> . . .

> **(B)** the return ... was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency ... or office with which the return ... is required to be filed....

. . .

**(c) Registered and certified mailing.—**

> **(1) Registered mail.—**For purposes of this section, if any such return ... is sent by United States registered mail—

>> **(A)** such registration shall be prima facie evidence that the return ... was delivered to the agency ... or office to which addressed, and

>> **(B)** the date of registration shall be deemed the postmark date.

> **(2) Certified mail.—**The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail.

26 U.S.C. § 7502.

The statute allows a taxpayer to prove timely filing on the basis of timely mailing notwithstanding the date of physical delivery of the tax filing to the IRS. Thus, § 7502 created a statutory "mailbox rule" by providing an exception to the physical delivery rule. The United States argues that this statutory mailbox rule replaces entirely the common law mailbox rule and preempts its application to all tax return mailings, timely or not. I disagree.

"[A]bsent a clear manifestation of contrary intent, a newly-enacted statute is presumed to be harmonious with existing law and its judicial construction." *Estate of Wood*, 909 F.2d at 1160 quoting *Johnson v. First Nat'l Bk. of Montevideo*, 719 F.2d 270, 277 (8th Cir.1983). "[I]f Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Stillians v. State of Iowa*, 843 F.2d 276, 280 (8th Cir.1988) quoting *Mid-*

*lantic Nat'l Bk. v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

The Tenth Circuit has not addressed § 7502. However, based on the statutory language and legislative history of § 7502, the Eighth and Ninth Circuits have rejected the view that § 7502 completely displaces the common law mailbox rule that presumes delivery. *Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992); *Estate of Wood,* 909 F.2d at 1160. Rather, these courts view § 7502 as creating a "safe harbor" which does not exclude application of the common law mailbox rule's presumption of delivery. *Id.* at 1161.

In contrast, the Second and Sixth Circuits have held that the exceptions contained in § 7502 are exclusive and that taxpayers cannot introduce testimony or other evidence to establish the actual date of mailing, or rely on the common law mailbox rule to establish that the IRS received a document. For example, in *Deutsch v. Commissioner,* 599 F.2d 44 (2d Cir.1979), the Court refused to apply § 7502 to a filing that was never received. However, the *Deutsch* court, without mentioning the common law mailbox rule, stated merely that "[t]he exception embodied in section 7502 ... demonstrate[s] a penchant for an easily applied, objective standard." The court then held that where " § 7502 is not literally applicable, the taxpayer may not prove delivery or timeliness by other evidence." *Id.* at 46.

In *Miller v. United States,* 784 F.2d 728 (6th Cir.1986), the Court rejected the Eighth Circuit's characterization of § 7502 as a "safe harbor" provision. *Id.* at 730–31. In so doing, the *Miller* court engaged in no independent analysis or reasoning but merely relied on *Deutsch.* Moreover, in *Carroll,* 71 F.3d at 1232, the most recent Sixth Circuit case discussing the issue, the authoring judge expressed dissatisfaction with the Sixth Circuit's position regarding § 7502. Judge Nelson indicated that it was time for his colleagues to rehear "the question whether a taxpayer who d[oes] not come within the terms of § 7502 could avail himself of the common law presumption that material prop-

erly mailed to the IRS will, in the normal course of time, be delivered." *Id.*

Section 7502 contains no language abrogating the common law mailbox rule. Nor does the statute state that its mailbox rule is exclusive. Also, by its plain terms, § 7502 applies only to those filings timely mailed. Further, the legislative history of § 7502 contains no indication that § 7502 was intended to completely displace the common law mailbox rule or that a presumption of delivery could apply only given the circumstances of subsection 7502(c). *See* H.R.Rep. No. 1337, 83d Cong., 2d Sess., reprinted in 1954 U.S.Code Cong. & Admin. News 4017, 4583; S.Rep. No. 1622, 83d Cong., 2d Sess., reprinted in 1954 U.S.Code Cong. & Admin. News 4621, 5266.

I am persuaded by the reasoning of the Eighth and Ninth Circuits that § 7502 is best viewed as a "safe harbor," creating multiple exceptions to the physical delivery rule while not barring the taxpayer from relying on other exceptions created by common law. *See e.g. Anderson,* 966 F.2d 487; *Estate of Wood,* 909 F.2d 1155. Moreover, if, by enacting § 7502, Congress intended to eliminate the common law mailbox rule, it could have so stated in the text of the statute. Accordingly, I hold that 26 U.S.C. § 7502 does not preempt the application of the common law mailbox rule that a properly mailed document is presumed delivered in the ordinary course of business.

### B. *Application of the common law mailbox rule in the 10th Circuit*

The United States seeks summary judgment on claim one stating that RVL's evidence of the alleged February 4, 1994, mailing is insufficient to trigger the common law presumption of delivery. RVL states it is entitled to summary judgment because the United States has failed to rebut the presumption of delivery invoked by RVL's "ample proof of mailing." I will deny the cross-motions.

In *Crude Oil Corp. v. Commissioner,* 161 F.2d 809 (10th Cir.1947), the Court stated that "[w]hen mail matter is properly addressed and deposited in the United States

mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary course of mail." *Id.* at 810. To invoke the presumption of delivery, a party may "either present evidence of actual mailing such as an affidavit from the employee who mailed the [return] or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the [return] was properly addressed and mailed." *Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir.1993). Where there is no direct evidence of mailing, a presumption of mailing may be established by testimony from a witness who has direct, personal knowledge that the mailing in question was handled in the usual course of business. *See e.g. Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 406–07 (E.D.Ark.1992)(mailbox rule presumption not invoked where there was no direct testimony of mailing and office procedures that would establish mailing); *United Bank of Denver v. Don*, 527 P.2d 1184, 1186 (Colo.App.1974).

■ RVL proffers Cantor's deposition testimony to establish the mailing procedures followed in the regular course of operations of his business. Cantor testified that on February 3, 1994, he delivered Form 941 to Horvitz for his signature. Pltf. Ex. 2, p. 19. Horvitz signed the Form 941 in Cantor's presence and returned it to him. *Id.* Cantor then placed the Form 941 in an envelope addressed to the IRS, Ogden, Utah 84201. On February 4, 1994, Cantor applied 32 cents metered postage to the envelope. *Id.* at 20–21. He then placed the envelope in the receptacle in his office that was used to deposit outgoing mail. *Id.* at 11, 23. Cantor testified that he does not recall who took the returns to be mailed on February 4, 1994. *Id.* However, he testified that either he or someone in the office took the mail to the mailbox located 20 yards outside the office or delivered it to the post office. *Id.* at 10–12. Apparently, only Mr. Cantor, his father, and a secretary work in the office.

The United States argues that RVL cannot rely on the common law presumption to establish the Form 941 mailing because 1) there is no testimony as to who actually mailed the outgoing documents on February 4, 1994, and 2) Cantor stated that no person in the office had the duty routinely to collect the envelopes and mail them. However, Cantor testified that either he or "someone in the office" did the mailing and there were only three persons working in the office. *Id.*

RVL also presents circumstantial evidence that Form 941 was mailed on February 4, 1994. Cantor testified that in addition to Form 941, he also prepared and mailed on February 4, 1994, RVL's state withholding tax return, state unemployment tax return, federal Form 940 EZ tax return, Form W–2 and Form W–3. RVL submits a copy of RVL's state unemployment tax form for the period ending January 31, 1994, date stamped as received February 17, 1994. Pltf. Ex. 3. Similarly, IRS records indicate that federal Form 940 EZ for the period ending January 31, 1994, was filed on February 22, 1994. Pltf. Ex. 4.

■ The evidence discussed above raises a strong inference that Form 941 for the period ending December 31, 1993, was mailed by Cantor on February 4, 1994. Under these circumstances, I find that there is sufficient evidence to invoke the common law presumption of delivery. *Godfrey*, 997 F.2d at 338. Once a taxpayer has established the presumption of delivery, the burden shifts to the United States to offer sufficient evidence to rebut this presumption. *Crude Oil*, 161 F.2d at 810.

As an initial matter, the United States contends that it enjoys a presumption of procedural regularity in administering its tasks such as filing properly delivered tax returns. *See United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6–7, 71 L.Ed. 131 (1926); *United States v. Ahrens*, 530 F.2d 781, 785 (8th Cir.1976). Thus, the question is whether RVL's presumption of delivery trumps the United States' presumption of correctness of government records. *See Crude Oil*, 161 F.2d 809.

■ "The presumption of the correctness of the Commissioner's finding [that the return was not received by the IRS] is one of law. It is not an inference of fact. It disappears when evidence, sufficient to sustain a

contrary finding, has been introduced." *Crude Oil,* 161 F.2d at 810. In contrast, the presumption of delivery, which arises when mail is properly addressed, stamped and deposited in the mail, creates a rebuttable presumption that the item was received by the addressee in the ordinary course of mail. *Id.* Thus, because proof of regular mailing establishes receipt in the ordinary course of mail, the presumption of correctness attached to the United States' procedures disappears, and the issue is decided wholly on the facts. *Id.* Therefore, the United States must rebut the presumption of delivery with specific facts, not by invoking another presumption. *Id.; Arkansas Motor Coaches v. Commissioner,* 198 F.2d 189, 191 (8th Cir.1952).

The United States offers the following evidence of the IRS' non-receipt of RVL's Form 941 presumed to have been mailed on February 4, 1994:

1. entries on the Certificate of Assessments and Payments that the IRS first received a return for the period at issue on May 2, 1994;

2. the IRS' mailing of a delinquency inquiry on April 18, 1994, indicating that the IRS had not received the quarterly tax return;

3. statements in correspondence from the IRS to RVL indicating that the only return received by the IRS was on May 2, 1994; and

4. a declaration of IRS Appeals Officer Margaret Bostow regarding numbers 1, 2, and 3, above.

The evidence in this case is, then, in equipoise. Under similar circumstances, the *Anderson* court found that whether the United States rebutted the presumption of delivery is a credibility determination. *Anderson,* 966 F.2d at 492. I agree. Thus, I will deny the cross-motions for summary judgment.

Accordingly, IT IS ORDERED that:

1. plaintiff's motion for summary judgment on claim one is DENIED; and

2. defendant's motion for summary judgment on claim one is DENIED.