**Rolly J. SORRENTINO and Joann M. Sorrentino, husband and wife, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CIV.A.01–K–129.**

United States District Court, D. Colorado.

Jan. 8, 2002.

Rolly J. Sorrentino, Wheat Ridge, CO, Pro se.

Joann M. Sorrentino, Wheat Ridge, CO, Pro se.

August A. Imholtz, III, U.S. Department of Justice Tax Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiffs Rolly and Joann Sorrentino, appearing *pro se*, seek a refund of federal income taxes overpaid during the 1994 tax year in the amount of $8551.00, plus interest, costs and attorney fees. Defendant United States concedes the Sorrentinos overpaid their 1994 federal income taxes in this amount, but has refused to refund their overpayment on the ground the Sorrentinos cannot prove they filed their refund claim by the applicable deadline. On October 25, 2001, I denied the United States' motion for summary judgment. *Sorrentino v. United States (Sorrentino I),* 171 F.Supp.2d 1150 (D.Colo.2001). For the reasons set forth below, I grant the Sorrentinos' subsequent motion for summary judgment.[1]

### *Factual Background*

The following facts are undisputed unless otherwise stated.

The deadline for the Sorrentinos to claim a refund for federal taxes overpaid in the 1994 tax year was April 15, 1998. In March, 1995, Mr. Sorrentino, an engineer, prepared a draft of his and his wife's joint federal tax return for 1994, which included a refund claim. He submitted a copy of this draft return to the financial aid office at their daughter's university in August, 1995, but did not finalize the return at this time because he was waiting for the Internal Revenue Service (IRS) to respond to his request for an "INPOL report" or transcript of all of his income as recorded by the IRS for the 1994 tax year. Mr. Sorrentino intended to use this report, which he had requested and received for previous tax years, to determine whether certain income he had received should be reported in the 1994 or 1995 tax year.

Mr. Sorrentino received an incomplete INPOL report from the IRS in September, 1995. After being absent from his home on a work project for nearly two years, he submitted a second request to the IRS for a 1994 INPOL report in September, 1997. When he did not receive the requested report, and with the April 15, 1998 filing deadline approaching, Mr. Sorrentino completed the 1994 return without the benefit of the INPOL report.

Mr. Sorrentino completed the 1994 joint tax return by March 1, 1998. On this date, both he and his wife signed and dated the return. On or about March 3, 1998, more than six weeks before the April 15, 1998 filing deadline, Mr. Sorrentino testified he personally placed the original of the 1994 tax return, postage prepaid and properly addressed to the IRS's processing facility in Austin, Texas, in a mail drop at the United States Post Office in Wheat Ridge, Colorado. He did not mail the return by certified or registered mail. Mr. Sorrentino retained a copy of the original return for his and his wife's records.

In September, 1998, Mr. Sorrentino contacted the IRS via its toll-free information line to ask why he had not received the refund claimed in his March 1, 1998 return. The IRS representative informed him the IRS did not have a record of receiving the return and directed him to send the agency a copy of the return.

---

1. I granted the Sorrentinos' motion from the bench on November 26, 2001, and informed the parties then that this written decision would follow.

The IRS received a photocopy of the Sorrentinos' 1994 return, dated March 1, 1998, on October 2, 1998. The IRS has no record of receiving the original return Mr. Sorrentino mailed to it in early March, 1998. As a result, the IRS treated the copy of the tax return it received on October 2, 1998 as the Sorrentinos' original return and, on January 28, 1999, disallowed the refund it claimed on the ground it was filed after the April 15, 1998 filing deadline. The IRS denied the Sorrentinos' appeal of this decision by letter dated May 11, 1999. The Sorrentinos' timely filed this action on January 23, 2001.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard. I view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir.1999). The Sorrentinos, as the moving party, have the initial burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. *Id.* If the Sorrentinos carry this burden, then the burden shifts to the United States to "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if a rational juror could decide the disputed allegations in the non-movant's favor based on the evidence presented and the disputed fact might affect the outcome of the suit under the governing law. *See Schwartz v. Bhd. of Maint. of Way Employees,* 264 F.3d 1181, 1183 (10th Cir.2001).

### Analysis

### I. The Sorrentinos' Motion for Summary Judgment

The parties agree that if the Sorrentinos' 1994 tax return was delivered to the IRS on or before April 15, 1998, or if the return was placed in the mail and postmarked on or before this date, then their refund claim was timely filed and the United States is required to refund the $8551.00 in federal taxes the Sorrentinos overpaid for the 1994 tax year.[2] The former scenario is based on the general rule that filing occurs upon physical delivery to the IRS, *see Sorrentino I,* 171 F.Supp.2d at 1153, and the latter on the statutory postmark rule, stated at 26 U.S.C. § 7502, which effectively extends the filing deadline by providing that in certain circumstances a document mailed to the IRS is deemed delivered and hence filed on the date it is postmarked, rather than on the date it is physically delivered to the IRS.

In *Sorrentino I,* I considered the United States' motion for summary judgment, in which it argued the Sorrentinos could not prove timely filing under either scenario because they admitted mailing their 1994 return, rather than physically delivering it to the out-of-state IRS processing facility,

---

2. The parties' agreement on the April 15, 1998 filing deadline is based on Internal Revenue Code provisions limiting refund claims to claims for taxes paid within the previous three years (plus any filing extensions), *see* 26 U.S.C. § 6511(b)(2)(A), and deeming prepaid income taxes paid on the April 15th following

the relevant tax year, *see id.* § 6513(b)(1). *See generally Weisbart v. United States Dep't of Treasury,* 222 F.3d 93, 94–96 (2d Cir.2000)(discussing filing deadlines for refund claims). The IRS considers a tax return that reflects an overpayment to be a refund claim. *See* 26 C.F.R. § 301.6402–3(a)(5).

and further admitted they had not mailed it certified or registered mail as, the United States argued, was required to invoke the statutory postmark rule. I denied the United States' motion upon determining that the Sorrentinos could, in fact, prove physical delivery of their 1994 tax return to the IRS pursuant to the common law mailbox rule. *See* 171 F.Supp.2d at 1152–54; *see also Schikore v. BankAm. Supplemental Ret. Plan,* 269 F.3d 956, 961 (9th Cir.2001) (common law mailbox rule "is a tool for determining, in the face of conflicting evidence, whether or not receipt has actually been accomplished"). As a result, it was not necessary to reach the United States' argument that the Sorrentinos could not prove timely filing under the separate statutory postmark rule.

As stated by the Tenth Circuit, the common law mailbox rule provides "[w]hen mail matter is properly addressed and deposited in the United States mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary course of the mail.... Proof of due mailing is prima facie evidence of receipt. It follows that the proof of regular mailing, in time to reach the [IRS], in the due course of mail, within the statutory filing period, [is] sufficient to support a finding that the return was timely filed." *Crude Oil Corp. v. Comm'r of Internal Revenue,* 161 F.2d 809, 810 (10th Cir.1947); *see, e.g., Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Witt v. Roadway Express,* 136 F.3d 1424, 1429–30 (10th Cir.1998). This rule applies to mailings by taxpayers to the IRS. *See, e.g., Crude Oil Corp.,* 161 F.2d at 810; *Lewis v. United States,* 144 F.3d 1220, 1222 (9th Cir.1998); *Arkansas Motor Coaches, Ltd. v. Comm'r of Internal Revenue,* 198 F.2d 189, 191 (8th Cir.1952).

In *Sorrentino I,* I determined that the evidence then in the record was sufficient for a reasonable juror to find that the Sorrentinos properly mailed their return in time for it to be delivered to the IRS weeks before the April 15, 1998 filing deadline. As a result, I found that the Sorrentinos were entitled, under the common law mailbox rule, to a rebuttable presumption that their 1994 tax return was timely filed with the IRS. As the United States failed to submit any evidence in support of its motion rebutting the presumption of delivery, I ruled it had failed to prove the absence of a genuine issue of fact regarding the timely filing of the Sorrentinos' 1994 return and refund claim and therefore denied its motion.

My holding in *Sorrentino I* that the Sorrentinos had presented sufficient evidence of mailing to invoke the common law mailbox rule *a fortiori* means they have submitted sufficient evidence of mailing and, under the rebuttable presumption, delivery and timely filing, to carry their initial burden of demonstrating the absence of any genuine issues of fact in connection with their motion for summary judgment. In order to avoid summary judgment based on the Sorrentinos' motion, therefore, the United States was required to set forth specific facts showing a genuine issue of fact as to either the fact of mailing or the presumed fact of delivery. *See* Fed. R.Civ.P. 56(e).

### A. Fact of Mailing

The United States did not present any evidence disputing that Mr. Sorrentino properly mailed the 1994 tax return to the IRS on or about March 3, 1998. Instead, it argues that Mr. Sorrentino's sworn statements of proper mailing, in deposition and affidavit, are insufficient as a matter of law to establish the fact of mailing because his statements are uncorroborated and self-serving.

■ The United States' argument lacks merit for any number of reasons. First, it ignores the general rule that an unopposed affidavit or other sworn statement needs no corroboration to establish an undisputed fact on summary judgment. *See* Fed.R.Civ.P. 56(e); *Walter v. Fiorenzo*, 840 F.2d 427, 434–35 (7th Cir.1988) ("motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit"). Second, it disregards the law of the case and other applicable law regarding evidence that will establish the fact of mailing under the mailbox rule. In *Sorrentino I*, I held that Mr. Sorrentino's testimony, together with the undisputed testimonial and record evidence that the Sorrentinos both executed their return on March 1, 1998, and that Mr. Sorrentino contacted the IRS to check on the status of the return before the October 2, 1998 filing date asserted by the IRS, was sufficient to establish the fact of mailing in early March, 1998. 171 F.Supp.2d at 1154. This holding was based on a long line of cases, not addressed by the United States, stating that direct evidence of mailing, such as an affidavit from the person who mailed the document, or even circumstantial evidence, such as proof of customary mailing practices in the sender's office, is sufficient evidence of actual mailing to invoke the mailbox rule and trigger its rebuttable presumption of delivery. *See, e.g., Schikore*, 269 F.3d at 964 ("a sworn statement is credible evidence of mailing for purposes of the mailbox rule"); *Godfrey v. United States*, 997 F.2d 335, 338 (7th Cir.1993) (sworn statement of individual who personally mailed the document is sufficient); *cf. Davis v. United States Postal Service*, 142 F.3d 1334, 1340 (10th Cir.1998) (refusing to apply mailbox rule because plaintiff did not offer an affidavit by the sender as to mailing or evidence regarding customary mailing practices in the sender's office that would permit an inference of mailing).

None of the authority offered by the United States in support of its argument is persuasive or even on point, as virtually all of it concerns the evidence necessary to invoke the statutory postmark rule, rather than the common law mailbox rule. As I made clear in *Sorrentino I*, this case turns on application of the common law rule, not the statutory postmark rule. The two rules are distinct, *see Lewis*, 144 F.3d at 1224–25 (Ret. Justice White, sitting by designation, dissenting), and that sworn statements of mailing may not be sufficient to establish a postmark under the statutory rule is irrelevant to determining the evidence sufficient to establish mailing under the common law rule.[3]

The only two cases cited by the United States that even touch on application of the common law mailbox rule are *Estate of Wood v. Commissioner*, 909 F.2d 1155 (8th Cir.1990), and *Anderson v. United States*, 966 F.2d 487 (9th Cir.1992). In *Estate of Wood*, one of the questions presented was whether the statutory postmark rule was available to a taxpayer when the IRS claimed it had not received the document mailed to it. *See* 909 F.2d at 1158–62 (interpreting 26 U.S.C. § 7502(a)(1)). The Eighth Circuit invoked the common law presumption of delivery to hold that where the taxpayer had presented sufficient evidence that the document had been postmarked as required by the statute, the common law presumption of delivery could

---

**3.** As I do not decide this case on the basis of the statutory postmark rule, I do not express any opinion on the United States' contention that uncorroborated taxpayer statements of mailing are insufficient to prove the date of postmark under 26 U.S.C. § 7502, other than to note that there is a variety of judicial opinion on what evidence may be used to prove the date of postmark under this statute.

be invoked to satisfy section 7502's requirement of delivery. *See* 909 F.2d at 1161–62. Nowhere in the decision does the court consider the evidence necessary to prove mailing outside of the context of the statutory postmark rule.

The Ninth Circuit's decision in *Anderson* also does not support the United States' position that a taxpayer's sworn statements cannot prove mailing under the common law rule. In that case, the court held a taxpayer could prove mailing and timely delivery to the IRS pursuant to the common law mailbox rule, and was not limited by the evidentiary limitations the United States claimed were inherent in the statutory rule. *See* 966 F.2d at 489–492. The taxpayer's evidence of mailing in that case happened to be her own testimony that she personally mailed her refund claim and watched a postal official postmark the envelope on a certain date and a friend's testimony that she had watched the taxpayer enter the post office with the envelope and return without it. The Ninth Circuit has previously rebuked the United States for "[p]laying lipservice" to *Anderson* by reading it as applying only where such evidence is presented, *see Lewis*, 144 F.3d at 1223 (United States "unreasonable to read *Anderson* in such a wooden way"), and has expressly stated that "a sworn statement is credible evidence of mailing for purposes of the mailbox rule." *Schikore*, 269 F.3d at 964 (citing *Lewis*, 144 F.3d at 1223).

The United States' contention that a sender's sworn statements of mailing is insufficient as a matter of law to prove mailing also rings hollow given its advancement of a contrary position in another tax case recently before this court. In *Reading Ventures, Ltd. v. United States*, 987 F.Supp. 1315 (D.Colo.1997), the exact same issue, whether the taxpayer had presented sufficient evidence of mailing to trigger the rebuttable presumption of delivery under the common law mailbox rule, was presented on summary judgment. The taxpayer's evidence of mailing consisted of deposition testimony of its accountant that he had prepared the subject tax form for mailing and placed it in an office receptacle where someone in the office would have picked it up and mailed it in the regular course of business. *Id.* at 1320. The United States argued the taxpayer had failed to establish mailing because it had not produced testimony that a person actually mailed the outgoing documents. *Id.* Obviously, if such evidence would have been sufficient in that case to establish mailing for purposes of the common law mailbox rule, then it is sufficient here.

At oral argument, the United States further complained that allowing taxpayers to prove mailing through sworn but uncorroborated statements "opens the floodgate for fraud and abuse of process" because it is impossible for the government to refute such statements. Tr. at 6. I disagree. In this as in most cases, the United States had an opportunity to test the taxpayer's account of mailing in deposition and to otherwise investigate the facts he related regarding the preparation and mailing of the subject tax return. Any inconsistencies in his account or other relevant evidence, such as a suspicious pattern of previous tax filings, could have been used to demonstrate a genuine issue as to the fact of mailing or at least as to Mr. Sorrentino's credibility. The United States, however, failed to produce or even allege any specific facts putting Mr. Sorrentino's credibility in issue or otherwise disputing that Mr. Sorrentino properly mailed the 1994 return in early March, 1998. Under these circumstances, the United States did not carry its burden of demonstrating a genuine issue for trial on the fact of when the Sorrentinos mailed their 1994 federal tax return. *See, e.g., Liberty Lobby*, 477

U.S. at 256–57, 106 S.Ct. 2505 (party opposing summary judgment must produce specific facts showing genuine issue of fact and may not rely on possibility jury will disbelieve testimony); *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1312 (10th Cir.2000) (alleged issue of witness' credibility did not preclude summary judgment because non-moving party failed to allege any specific deficiency in witness' account); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2726 at 445 (3d ed.1998) (general rule is specific facts must be produced to put credibility in issue so as to preclude summary judgment). Accordingly, the Sorrentinos' evidence of mailing on or about March 3, 1998 is undisputed and is therefore established for purposes of their motion for summary judgment.

### B. Presumed Fact of Delivery

 As stated earlier, proof of proper mailing creates a rebuttable presumption the mailed document was received by the addressee in the ordinary course of the mail. In practical terms, this translates to a rebuttable presumption that the mailed document was delivered no later than five days after it was mailed. *See Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001) (presumption of delivery in 3–5 days); *Carroll v. Comm'r of Internal Revenue*, 71 F.3d 1228, 1230 (6th Cir.1995)(delivery presumed in 2–3 days). Under the facts of this case, therefore, the Sorrentinos' proof that they mailed their 1994 tax return to the IRS on or about March 3, 1998 creates a rebuttable presumption that

the return was delivered to and therefore filed with the IRS no later than March 8, 1998, more than five weeks before the April 15, 1998 filing deadline.

 To rebut this presumption, and thereby create a genuine issue for trial on the fact of delivery, the United States was required to produce evidence that would support a finding that the IRS did not receive the Sorrentinos' return. *See Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir.1995); *see Witt*, 136 F.3d at 1430 ("evidence denying receipt creates a credibility issue that must be resolved by the trier of fact.").[4] The evidence offered by the United States on this issue consisted solely of copies of: (1) a Certificate of Official Record annexing Form 4340, a "Certificate of Assessment, Payments and Other Specified Matters," for the Sorrentinos' 1994 tax year; (2) a certification from an IRS official that the Certificate is a true and complete transcript of the matters it addresses as they appear in the official records of the IRS; and (3) a declaration by United States' counsel that the referenced Certificate of Assessment "reflects the fact that the plaintiffs' 1994 Form 1040 tax return was received by the IRS on October 2, 1998."

The Certificate of Assessment indeed states the Sorrentinos' 1994 tax return was filed October 2, 1998. In its motion for summary judgment, however, the United States admitted the return referenced in these documents and received on October 2, 1998 was a photocopy of the Sorrentinos' March 1, 1998 return, rather than the original return. *See* U.S. Memo. in Support of

---

4. Under the "bursting bubble" approach to presumption set forth in Federal Rule of Evidence 301, once the presumption is rebutted, it disappears from the case, leaving the finder of fact to weigh the evidence and make a factual determination concerning receipt. *Nunley*, 52 F.3d at 796; *In re Yoder*, 758 F.2d 1114, 1119–20 (6th Cir.1985); Fed.R.Evid.

301. However, "[e]ven after the 'bubble' of presumption has 'burst,' the factual question of receipt remains and may be decided in favor of receipt by a fact finder who may choose to draw inferences of receipt from the evidence of mailing, in spite of contrary evidence." *Nunley*, 52 F.3d at 796.

U.S. Mot. for Summ. J. at 4, ¶ 14. Thus, the United States' evidence of non-delivery is that the IRS has no record of having received the original 1994 tax return mailed by Mr. Sorrentino on or about March 3, 1998.

■ It is well established that evidence "[m]erely stating that the document isn't in the addressee's files or records ... is insufficient to rebut the presumption of receipt" that arises under the common law mailbox rule. *Huizar v. Carey*, 273 F.3d 1220, 1223 n. 3 (9th Cir.2001); *see, e.g., Schikore*, 269 F.3d at 964 nn. 7, 8 (party's statement that mailed form is not presently contained in its files is insufficient to constitute the requisite "specific factual denial of receipt"); *Jones v. United States*, 226 F.2d 24, 27 (9th Cir.1955) ("The showing that a search of the pertinent files in the [addressee's] office revealed no record of the [mailed document] having been filed is a purely negative circumstance, insufficient ... to rebut the presumption of delivery."); *In re Nimz Transp., Inc.*, 505 F.2d 177, 179 (7th Cir.1974) (same); 31A C.J.S. § 156 nn. 31, 32 (1996 & Supp.2001) (collecting cases). Such evidence will rebut the presumption, however, and create a genuine issue for trial concerning receipt of the mailed document, if the addressee also produces evidence:

> describ[ing] in detail [the addressee's] procedures for receiving, sorting and distributing mail, [showing] that these procedures were properly followed at the time when the document in question

might conceivably have been delivered by the postal service, [providing] evidence that [the addressee] has conducted a thorough search for the document at the addressee's physical facility, and [establishing] that had the document been received around the time the [party] asserted it was mailed, it would presently be at the location searched by the [addressee].

*Schikore*, 269 F.3d at 964; *see, e.g., Legille v. Dann*, 544 F.2d at 1, 7–8 (D.C.Cir.1976) (Patent Office rebutted presumption of delivery through evidence detailing mail receipt procedures during time in question); *Crude Oil Corp.*, 161 F.2d at 810 (issue of fact as to delivery created by IRS's evidence describing "the careful method of handling mail received by the Collector's office ... from which it could have been inferred that the [mailed documents] were not received through the mail by the Collector's office."); *but see Charlson Realty Co. v. United States*, 181 Ct.Cl. 262, 384 F.2d 434, 443–45 (1967) (presumption of delivery was not rebutted by production of evidence of customary mail receipt and recording procedures).[5]

The United States did not submit any testimony or other evidence regarding the IRS's procedures for receiving mail and recording the receipt of documents received at the IRS's Austin facility in early March, 1998, when the Sorrentinos' return is presumed to have been delivered there. Neither did the United States present any evidence that it had conducted a thorough

---

5. It is also well established that direct testimony or an affidavit by the individual to whom the document was addressed specifically denying that he or she received the document is generally sufficient to rebut the presumption and therefore create a triable issue of fact. *See, e.g., Lozano*, 258 F.3d at 1166; *Witt*, 136 F.3d at 1430. Where the addressee is an organization, however, the presumption of delivery is not overcome by testimony of an individual that he did not receive the mailed document unless it is also shown that no other employees who might have received the organization's mail in the relevant period received the document. *See, e.g., Merchs.' & Mfrs.' Ass'n v. First Nat'l Bank*, 40 Ariz. 531, 14 P.2d 717, 719–20 (1932) (cited with approval in *Crude Oil Corp.*, 161 F.2d at 810); 29 Am.Jur.2d *Evidence* § 266 & nn. 45, 46 (1994 & Supp.2001) (collecting cases).

search for the Sorrentinos' missing return at appropriate locations. Accordingly, pursuant to the authority cited above, the United States failed to produce evidence rebutting the presumption that the Sorrentinos' return was delivered to it and thus filed on or about March 8, 1998.[6] As a result, there is no genuine issue of fact regarding the timely filing of the Sorrentinos' 1994 tax return, and the Sorrentinos are entitled to summary judgment on their refund claim.

## II. Interest, Costs, Attorney Fees and Sanctions

In addition to a refund of $8551.00 in federal taxes overpaid for the 1994 tax year, the Sorrentinos seek pre- and post-judgment interest on this amount, court costs, other litigation costs and attorney fees. The Sorrentinos also request that sanctions and/or punitive damages be awarded against the United States.

### A. Interest

■ The Sorrentinos are entitled to pre- and post-judgment interest on the amount of their overpayment for 1994 pursuant to 26 U.S.C. § 6611(a) and 28 U.S.C.

§ 2411. Interest is due under these provisions "from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue." 28 U.S.C. § 2411. The rate of interest is determined pursuant to 26 U.S.C. § 6621(a)(1). The parties agree that the amount of interest due under these provision as of December 4, 2001 was $5922.68.

### B. Litigation Costs and Attorney Fees

The Sorrentinos' request for an award of litigation costs and attorney fees is governed by section 7430 of the Internal Revenue Code.[7] It provides that the prevailing party in an action against the United States to obtain a tax refund may be awarded its "reasonable litigation costs," 26 U.S.C. § 7430(a), which includes reasonable fees "paid or incurred for the services of attorneys." Id. § 7430(c)(1).

■ Individuals who represent themselves *pro se* may not recover attorney fees or other compensation for their time under this provision because they have not paid or incurred fees for these efforts.

---

**6.** The United States cites *Reading Ventures, Ltd. v. United States*, 987 F.Supp. 1315 (D.Colo.1997), as establishing that a Certificate of Assessment showing no record of receipt before the filing deadline is sufficient to rebut the presumption of delivery and create a triable issue of fact as to timely filing. In that case, however, the United States also submitted a declaration from an IRS official regarding the Certificate of Assessment and other evidence in the record regarding non-receipt of the taxpayer's mailed document. *See id.* at 1321. To the extent, if any, that this declaration did not include evidence as to the IRS's mail handling and record-keeping procedures and its search for the missing document, as detailed above, I disagree with the court's decision that the presumption of delivery is rebutted by the lack of a record of receipt. I further note that the Ninth Circuit, author of the *Anderson* decision relied upon in

*Reading Ventures*, has since confirmed that more than a record of non-receipt is required to rebut the presumption of delivery. *See, e.g., Schikore*, 269 F.3d at 964 nn.7, 8.

**7.** This provision incorporates the requirements stated in the Equal Access to Justice Act (EAJA) for applying for an award of fees and costs. *See* 26 U.S.C. § 7430(c)(4)(A)(ii) (incorporating first sentence of 28 U.S.C. § 2412(d)(1)(B)). These include the jurisdictional requirement that an application for fees be filed within 30 days of final judgment. 28 U.S.C. § 2412(d)(1)(B). A litigant may also, as the Sorrentinos have done here, file an application for an award of fees and costs before entry of final judgment. *See Koch v. United States*, 47 F.3d 1015, 1021 (10th Cir. 1995); *Myers v. Sullivan*, 916 F.2d 659, 669 (11th Cir.1990).

*See McCormack v. United States,* 891 F.2d 24, 25 (1st Cir.1989); *United States v. McPherson,* 840 F.2d 244, 245 (4th Cir. 1988). Accordingly, the Sorrentinos are not entitled to the $2000.00 they seek for Mr. Sorrentino's time in prosecuting this action.

■ The Sorrentinos may recover the other costs and fees they seek if they are the "prevailing party" as defined by the statute.[8] *See* 26 U.S.C. § 7430(a). This requirement is met if: (1) the Sorrentinos substantially prevailed in this action with respect to the amount in controversy or the most significant issues presented *and* (2) the United States' position in this dispute was not "substantially justified." *Id.* § 7430(c)(4)(A), (B). A litigation position "can be justified even though it is not correct" and is deemed substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (defining "substantially justified" in EAJA context); *Lewis,* 144 F.3d at 1222; *In re Rasbury,* 24 F.3d 159, 168 (11th Cir.1994).

■ There is no question the Sorrentinos substantially prevailed in this action. Although the issue is somewhat closer, I also conclude the United States' position in this dispute was not substantially justified and that the Sorrentinos are therefore entitled to recover their reasonable litigation costs in this action.

One of the factors Congress directed I consider in determining whether the United States' position was substantially justified is whether the United States has lost in courts of appeal for other circuits on substantially similar issues. 26 U.S.C. § 7430(c)(4)(B)(iii). The threshold issue in this case was whether the common law mailbox rule is available to a taxpayer to prove timely delivery and filing of a mailed document to the IRS. The United States' position that this rule has not been applicable against the IRS since at least 1916 ignored contrary law in this and other circuits. *See Crude Oil Corp.,* 161 F.2d at 810; *Sorrentino I,* 171 F.Supp.2d at 1153 (discussing relevant authority). Its alternate argument, that the common law rule was completely supplanted by enactment of the statutory postmark rule, 26 U.S.C. § 7502, has been rejected in the Eighth and Ninth Circuits and by this court. *See, e.g., Lewis,* 144 F.3d at 1222; *Estate of Wood,* 909 F.2d at 1160; *Reading Ventures,* 987 F.Supp. at 1318–19.

Although two courts of appeal, the Second and Sixth Circuits, have accepted the United States' position that the statutory postmark rule is the exclusive means for a taxpayer to prove timely filing of a document through the mails, *see, e.g., Miller v. United States,* 784 F.2d 728, 731 (6th Cir. 1986); *Deutsch v. Comm'r of Internal Revenue,* 599 F.2d 44, 46 (2d Cir.1979), this view has been criticized even in these jurisdictions. *See Carroll v. Comm'r of Internal Revenue,* 71 F.3d 1228 (6th Cir.1995). As the Sixth Circuit recognized in *Carroll:* "If the [taxpayers] had been residents of any state other than Tennessee, Kentucky, Ohio, Michigan, Connecticut, New York, or Vermont, the Tax Court would have allowed them to invoke the [common law] presumption of delivery and would have decided this case in their favor. Because the [taxpayers] live in Tennessee, however, the presumption does not work for them." *Id.* at 1233.

The Sorrentinos live in Colorado, not a state in the Second or Sixth Circuits.

---

8. The statute also bars recovery unless the prevailing party exhausted available administrative remedies before bringing suit. *Id.* § 7430(b)(1). There is no question the Sorrentinos exhausted their administrative remedies in this case.

Throughout this case, the United States has refused to acknowledge that the common law mailbox rule continues to be applied in courts outside of these circuits. It also had no justification to continue to argue and cite authority regarding the statutory postmark rule, and only the statutory postmark rule, even after my ruling in *Sorrentino I* that this case could and would be decided based on the distinct common law mailbox rule. The position that a taxpayer can only prove timely filing through the statutory postmark rule, and only then through presentation of the postmarked envelope or a registered or certified mail receipt, has been deemed so unreasonable that it is an abuse of discretion *not* to award fees and costs against the government. *See Lewis,* 144 F.3d at 1222–1224 (reversing district court for failing to award costs and fees under § 7430). For all of these reasons, I find the position of the United States in this action was not substantially justified and therefore hold that the Sorrentinos are entitled to recover their reasonable litigation costs in connection with this action.

 The Sorrentinos have submitted a claim for $384.00 for filing, service, postage and copying costs, all of which are reasonable and recoverable under section 7430. *See, e.g.,* 26 U.S.C. § 7430(c)(1); *Miller v. Alamo,* 983 F.2d 856, 862 (8th Cir.1993). The Sorrentinos also claim $225.00 in attorney fees. Under the statute, fees incurred "for the services of attorneys in connection with the court proceeding" may only be awarded at a rate of $125/hour unless the court determines that a special factor justifies a higher rate. *See* 26 U.S.C. § 7430(c)(1)(B)(iii). Accordingly, if the Sorrentinos wish to recover the claimed attorney fees, they must file an itemized statement from the attorney stating the actual time expended and the rate at which his or her fee was computed. *See id.; see also* 28 U.S.C. § 2412(d)(1)(B). If the attorney's rate is more than $125/hour,

they must also submit a statement justifying the higher rate. *See* 26 U.S.C. § 7430(c)(1)(B)(iii).

## C. Sanctions

 Finally, the Sorrentinos request that I impose sanctions and/or punitive damages against the IRS because "a little investigation, a little common sense and exercise of good judgment on the part of defendant could have eliminated the need for litigation in this case." Pl.'s Statement of Claim at 2. While I heartily concur in this assessment, I deny their request as there is no basis for awarding sanctions or punitive damages in this action.

### *Conclusion*

The United States acknowledged in oral argument that the IRS loses documents properly mailed to it by honest taxpayers, but maintains that any taxpayer who fails to transmit documents via certified or registered mail assumes this risk. For the reasons set forth above, this is not the law. Furthermore, it is difficult to believe as a practical matter that the United States truly wants its Postal Service and IRS employees to be consumed with processing the millions of certified and registered mail requests that would result if the IRS advertised the position it advanced in this action. In fact, the IRS has for decades encouraged taxpayers to file tax documents through placement in the regular U.S. mail. *See, e.g., Jones,* 226 F.2d at 28. There is no basis in law or equity to require the taxpayer to bear the risk that such mailings are not properly recorded by the IRS. That some unscrupulous taxpayers might perjure themselves to obtain the benefit of the common law mailbox rule is no reason to penalize honest taxpayers who trust their government to handle mailed tax returns properly. The common law mailbox rule, with its *rebuttable* pre-

sumption of delivery, offers the United States ample opportunity to create a triable issue of fact that will allow the fact finder to make its own judgment on the taxpayer's credibility.

The Sorrentinos' Motion for Summary Judgment is GRANTED. Judgment shall be entered in the Sorrentinos' favor and against the United States. The United States shall pay the Sorrentinos pre- and post-judgment interest as provided in 26 U.S.C. § 6611(a) and § 2411, as well as the fees and costs set forth in Paragraphs 4 and 5 of Plaintiffs' December 6, 2001 Statement of Claim, Costs, Damages and Request for Relief. The Sorrentinos' request for an award of attorney fees, as set forth in Paragraph 6 of their Statement, is DENIED with leave to resubmit with the additional information set forth above. The Sorrentinos' requests to recover for Mr. Sorrentino's time in prosecuting this action, as stated in Paragraph 7 of Plaintiffs' Statement, and for sanctions or other relief as stated in Paragraph 8 of the Statement, are DENIED.